1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MATTHEW BECKER, et al.,

             Plaintiffs,

     v.

TIG INSURANCE CO., et al.,

             Defendants.

CASE NO. 3:21-cv-05185-JHC

ORDER

## I.

### INTRODUCTION

This matter comes before the Court on Plaintiffs' LCR 37 Submission Regarding Interrogatories No. 1-14 & 16-20 ("ROG Motion"), Dkt. # 81, and Plaintiffs' LCR 37 Submissions Regarding Their Request for Production ("RFP Motion"). Dkt. # 82. The Court has considered the materials filed in support of, and in opposition to, the motions, and the case file. Being fully advised, the Court GRANTS in part and DENIES in part the ROG Motion and DENIES the RFP Motion.

ORDER - 1

## II.

### BACKGROUND

This case involves an insurance coverage dispute in which Plaintiffs, alleged assignees of Highmark Homes LLC ("Highmark"), assert claims for relief against a group of insurance carrier defendants. Dkt. # 2 at 2–3. Plaintiffs are homeowners at the East Park Development in Bremerton, Washington. *Id.* at 5–8. Highmark was the developer of the East Park Development. *Id.* at 650. Defendant TIG Insurance Company ("TIG"), as successor by merger to America Safety Indemnity Company ("ASIC"), issued general commercial liability policies to Highmark. *Id.* at 3, 8. Plaintiffs' claims arise from the settlement of a construction defect case brought by Plaintiffs in Kitsap County Superior Court against Highmark. *Id.* at 3–5. RiverStone Claims Management, LLC ("RiverStone") was the claims administrator for TIG. Dkt. # 53-1 at 2. As to TIG, Plaintiffs seek declaratory relief and assert claims for breach of contract, bad faith, negligent misrepresentation, negligence, estoppel, and violations of the Washington Administrative Code, the Consumer Protection Act, and the Insurance Fair Conduct Act. Dkt. # 2 at 43–61. Plaintiffs' claims against TIG stem from TIG's defense of Highmark and its later denial of coverage. *Id.* at 1419–41, 1594–1604.

## III.

### ANALYSIS

A.    Legal Standard

Federal Rule of Civil Procedure 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

1

2

B.     ROG Motion

Plaintiffs' ROG Motion concerns TIG's responses and objections to 19 of Plaintiffs'

3

interrogatories.  *See* Dkt. # 45-39.  The purpose of interrogatories is "to enable a party to prepare

4

for trial, to narrow the issues and thus help determine what evidence will be needed at the trial."

5

Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *8B Federal Practice & Procedure* §

6

2162 (2022 ed.) (citing *Evans v. Local Union 2127, Intern. Broth. of Elec. Workers, AFL–CIO*,

7

313 F. Supp. 1354 (N.D. Ga. 1969)).

8

1.     Interrogatory 1

9

In this interrogatory, Plaintiffs seek the identities of all persons who helped prepare TIG's

10

responses to Plaintiffs' interrogatories.  Dkt. # 81 at 6.  TIG objects based on the work-product

11

doctrine and other grounds.  *Id.*  The identities of all those who aided in drafting TIG's responses

12

would appear protected from disclosure under the work-product doctrine.  *See, e.g.*, *Strauss v.*

13

*Credit Lyonnais, S.A.*, 242 F.R.D. 199, 232 (E.D.N.Y. 2007) (denying a motion to compel a

14

response to an interrogatory that sought "the identities of individuals upon whom plaintiffs relied

15

to assist in the preparation of their interrogatory responses" based on work-product doctrine);

16

*United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 270 F. Supp. 3d 220, 222

17

(D.D.C. 2017) (denying a motion to compel a response to an interrogatory that sought the

18

identities of all persons a party interviewed "or from whom statements or documents [were]

19

obtained" based on work-product doctrine); *Bose v. Rhodes Coll.*, No. 16-CV-02308-JTF-TMP,

20

2017 WL 4479258, at *9 (W.D. Tenn. Oct. 6, 2017).[1]

21

22

23

24

[1] In a similar context, the *All Assets Held* court explained the difference between permissible and impermissible interrogatories:

The undersigned believes that the better-reasoned cases, especially given the facts presented here, "are those that draw a distinction between discovery requests that seek the identification of persons with knowledge about the claims or defenses (or other relevant issues)"—requests, like Interrogatory 9, that are plainly permissible—"and those that seek the identification of persons who have been contacted or interviewed by counsel

2.       Interrogatories 6, 7, 10, 11, 12, 13, 14, 16, 17, 19

These interrogatories seek information about TIG's business practices and investigations as to the insurance claims at issue.  Dkt. # 81 at 15–30.  TIG objects, stating that the interrogatories are "overly broad, both as to timeframe and scope," along with other objections. *Id.*  Overly broad interrogatories "are an abuse of the discovery process."  *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D. N.M. 2007) (holding contention interrogatories requiring responding party to state "each and every fact" supporting the party's contentions were impermissibly overbroad); *see also Behrazfar v. Unisys Corp.*, No. SACV 08-0850-AG-RCX, 2009 WL 10673197, at *3 (C.D. Cal. June 3, 2009) ("An objection will be sustained if either a particular interrogatory or a set of interrogatories is thought by the Court to be so broad and all inclusive as to be burdensome.") (quoting *Flour Mills of Am., Inc. v. Pace*, 75 F.R.D. 676, 680 (E.D. Okla. 1977)). Courts confronting overbroad interrogatories need not impose limiting constructions but may instead deny the request to compel responses.  *See Medicis Pharm. Corp. v. Actavis Mid Atl. LLC*, 2012 WL 1633178, at *3 (D. Del. Apr. 30, 2012) (declining to "rewrite" overbroad interrogatories).

The interrogatories at issue are overly broad.  Each uses language that widens the scope of the request to an impermissible extent.  For example, Interrogatory 7 asks TIG to provide "the particulars for each of TIG/ASIC and RiverStone's business practices relating to claims management, written and unwritten," including "instruction(s), custom(s), practice(s), [and] procedure(s)."  Dkt. # 81 at 17.  And Plaintiffs also seek TIG's "step by step, and task by task

concerning the case." *Tracy v. NVR*, 250 F.R.D. 130, 132–33 (W.D.N.Y. 2008) (collecting cases).  Based on this line of reasoning, Plaintiff is "free to ask for names of persons with knowledge of the facts, but it is not entitled, through [Claimant], to the identification of who among such knowledgeable individuals have been interviewed by [Claimant's counsel]." *Seven Hanover Assocs., LLC v. Jones Lang LaSalle Americas, Inc.*, No. 04 CIV. 4143 PACMHD, 2005 WL 3358597, at *1 n.1 (S.D.N.Y. Dec. 7, 2005). 270 F. Supp. 3d at 225 (alterations in original).

procedures and process[es]" throughout any lawsuit against an insured.  *Id.*  Such a request is overly broad.  *See Dobson v. Twin City Fire Ins. Co.*, No. SACV 11-0192-DOC, 2011 WL 6288103, at *3 (C.D. Cal. Dec. 14, 2011) (denying discovery request for all documents about an insurer's claims handling procedures based on overbreadth because the request "encompasses far more information than relevant to the policy at issue").  Nonetheless, in response to Interrogatory 7, TIG offers to produce the operative claims handling guidelines should the Court enter a protective order.  Dkt. # 81 at 18.

Then, in each interrogatory, Plaintiffs request that TIG identify the "particulars" of the subject of the discovery request.  *See* Dkt. # 45-32.  Plaintiffs' page-long, single-spaced definition for this term further broadens the scope of these interrogatories.  *Id.* at 10.  If the subject of a discovery request is a person, the definition includes the person's complete professional history—their "training background, apprenticeships, educational history, . . . all licenses they hold, . . . all job positions, and titles held, [and] professional background."  *Id.*  If the subject of a discovery request is a "thing or occasion," the definition includes the "Who," "What," "Where," "When," and "Why" behind the "thing or occasion."[2]  *Id.*  Plaintiffs'

---

[2] Plaintiffs define "particulars," when referring to a "thing or occasion," as follows:
"*Particular(s)*" (thing or occasion) as used herein for the *Who*, (2) the *What*, (3) what place (*Where*), (4) at what time or date (*When*), and (5) the reasons or cause what (*Why*[]) . . .
(1) "*Who*" full name, email, current or last known address and phone number,
(2) "*What*" when it is:
    a. [U]sed interrogatively as a request for specific information: *What is the matter?*
    b. Used interrogatively to inquire about the character, occupation, etc., of a person: *What does he do?*
    c. Used interrogatively to inquire about the origin, *identity*, etc., of something: *What are those birds?*
    d. Used interrogatively to inquire about the worth, usefulness, force, or importance: *What is wealth without friends?*
    e. Used interrogatively to request a repetition of words or information not fully understood, usually used in elliptical constructions: *You need what?*
    f. Used interrogatively to inquire the reason or purpose of something, usually used in elliptical constructions: *What of it?*
(3) "*Where*" as used herein means in or at what place: *Where is he? Where do you live?*

expansive definition of particulars further makes these interrogatories overly broad.  *See Diversified Prods. Corp. v. Sports Ctr. Co.*, 42 F.R.D. 3, 4 (D. Md. 1967) ("[T]he use of unreasonable 'definitions' may render the interrogatories so burdensome to the answering party and to the Court, that objections to the entire series should be sustained. . . .").

For Interrogatories 10 through 14, 16, 17, and 19, TIG also objects on the grounds that the interrogatories are vague and confusing.  Dkt. # 81 at 15–30.  District courts may properly deny requests to compel responses to interrogatories containing vague and confusing language. *See Chang v. Vanderwielen*, No. C22-0013-SKV, 2022 WL 2871576, at *3 (W.D. Wash. July 21, 2022); *Hackensack Univ. Med. Ctr. v. Becerra*, No. CV2112233ESMAH, 2022 WL 3500418, at *4 (D.N.J. Aug. 18, 2022); *Behrazfar*, 2009 WL 10673197, at *3.  As to Interrogatories 12, 14, and 16, the Court agrees with TIG that these interrogatories contain vague and confusing language,[3]  to which TIG need not respond.

3.      Interrogatories 2, 3, 4, 5, 8, 18

These interrogatories seek information about TIG's corporate structure, claims management software, relationships with other companies, personnel involved in altering insurance policies, and TIG's defense of other cases.  Dkt. # 81 at 8–15, 19, 27.  TIG objects on relevance grounds, among others.  *Id.*  For discovery, relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear

---

(4) "*When*" as used herein means at what time or period? *How long ago? How soon?*
(5) "*Why*" as used her in [sic] for what? For what reason, cause, or purpose? *Why did you misbehave?*
Dkt. # 45-32 at 10 (emphasis in original).

[3]  For example, Interrogatory 14 asks TIG to "[i]dentify the *particulars of the environment* and *details of each . . . employee . . .* who reviewed [Plaintiffs'] complaint . . . and ASIC's 2012 - 2013 insurance policy . . . and *identify each word, term, fact, phrase, definition, vocabulary, claim, statement, claim or other information* each person relied on upon in the answers and provide the particulars used to finalize their findings, opinions, and conclusions."  Dkt. # 81 at 24 (emphasis added).

on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). On a motion to compel discovery, the movant bears the initial burden of establishing relevance. *Apple Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630-LHK-PSG, 2013 WL 3246094, at *2 (N.D. Cal. June 26, 2013). Trial courts may properly deny a discovery request that seeks information that bears no relationship to the complaint's subject matter. *See Willemijn Houdstermaatschaapij BV v. Apollo Comput. Inc.*, 707 F. Supp. 1429, 1441 (D. Del. 1989) (refusing to compel responses to interrogatories that sought information that did not "pertain to th[at] litigation").

For Interrogatories 2 and 3, Plaintiffs concede that "[t]he information in [these] request[s] may not be directly relevant to the homeowners' claims." Dkt. # 81 at 8, 10. The Court agrees. For Interrogatory 4, Plaintiffs do not explain how an alleged change to a phrase in an application for insurance is relevant to this action.[4] And for Interrogatories 5, 8, and 18, Plaintiffs fail to show how the drafting history of ASIC's endorsement; claims management software used by TIG, ASIC, or RiverStone; or information about other cases bear on, or could lead to other matter that could bear on, the particular facts, claims, and defenses for this case.[5] *Oppenheimer Fund, Inc.*, 437 U.S. at 351.

---

[4] Plaintiffs direct the Court to an exhibit, but Plaintiffs submitted no exhibits or declarations in support of their ROG Motion. *See* Dkt. # 81.

[5] Interrogatories 4, 5, and 18 are also overly broad. Interrogatory 4 asks for the "particulars" for each "ASIC employee, agent, or contractor who was involved with or has any knowledge of the creation, drafting, content, or approval" of the phrasing of a question in an insurance application over a four-year period. Dkt. # 81 at 12. Plaintiffs' definition of "particulars" extends the reach of this interrogatory. This interrogatory is overly broad because it covers far more information than relevant to the claims and defenses at issue. Interrogatory 5 is overly broad for the same reason. *Id.* at 13 (seeking the "particulars" for "each person who was involved in the creating, drafting, editing, authorizing, finalizing, approving, commenting, or adding content or questions to any version" of ASIC's endorsement). And Interrogatory 18, which asks for the "particulars" for every case or matter involving the disputed ASIC endorsement over a five-year period, is overly broad by seeking the details of other cases. *Id.* at 27.

ORDER - 7

1

2

3

4        4.        Interrogatory 9

        Interrogatory 9 asks TIG to identify:

        [E]ach person that ASIC, TIG, and RiverStone utilized (whether as an employee or
        independent contractor and including lawyers) who participated in the evaluation
        of the Highmark's tender, decisions on the duty to defend, investigating the claims,
        determine which endorsements or exclusions may apply, communicating with the
        insured, tracking of the underlying matter, settlement negotiations, coverage
        analysis, and delicate handling or managing of plaintiffs' underlying matter in the
        evaluation of insurance coverage issues and a brief description of each such
        person's involvement, and the inclusive dates of each such person's activity.

Dkt. # 81 at 20.  TIG objects on the grounds that the Interrogatory is overly broad, vague,

and confusing.  While this interrogatory is hardly a model of clarity, it appears that

Plaintiffs merely seek the identities of each person who played a role during the lifecycle

of the insurance claims at issue and accompanying brief descriptions.

        Despite its objections, TIG "informs Plaintiffs that the answers to this

interrogatory are found in the nonprivileged portions of ASIC's claims file, previously

produced to Plaintiffs and bearing Bates Nos. ASIC 000001-000872."  *Id.*  TIG says that

it properly answered the interrogatory by relying on business records already in

Plaintiffs' possession under Federal Rule of Civil Procedure 33(d).  Rule 33(d) permits a

party to respond to a discovery request by producing business records rather than a

written response, but only "if the burden of deriving or ascertaining the answer will be

substantially the same for either party."  Fed. R. Civ. P. 33(d).  If so, "the responding

party may answer by . . . specifying the records that must be reviewed, in sufficient detail

to enable the interrogating party to locate and identify them as readily as the responding

party could."  *Id.*  But the responding party may not "abuse the option," Fed. R. Civ. P.

33 Advisory Committee Notes (1980 Amendment), by "impos[ing] on [the] interrogating

party a mass of records as to which research is feasible only for one familiar with the records," *id.* (1970 Amendment).

TIG did not specify records for Plaintiffs to examine in any detail. Instead, TIG directed Plaintiffs to review the entire claims file. *See Riverfront Landing Phase II Owners' Ass'n v. Assurance Co. of Am.*, No. C08-0656RSL, 2008 WL 11344626, at *2 (W.D. Wash. Dec. 16, 2008) (defendant could not rely on Rule 33(d) for proposition that answers to interrogatory identifying all persons with knowledge of an insurance claim could be found in the 700-page claim file previously provided to plaintiff). And here, the burden is unequal; presumably, TIG is more familiar with the individuals involved. *See id.* ("Defendant is in a much better position to identify who amongst its own employees was involved in a particular claim [because] defendant at the very least has a basic knowledge of who is staffed on each claim and, from that starting point, may further deduce who else was involved.").

5.     Interrogatory 20

This interrogatory asks TIG to "[s]tate the particulars for the factual basis for each affirmative defense identified in [TIG's] answer." Dkt. # 81 at 30. TIG objects on three grounds, asserting that the interrogatory: (1) "is premature, as investigation and discovery are ongoing"; (2) "seeks a 'dress rehearsal' of [TIG's] case at trial"; and (3) "seeks information protected by [the] attorney-client privilege and work-product doctrine." *Id.* Similar to Interrogatory 9, TIG states that the answers to Interrogatory 20 may be found in the discovery previously produced to Plaintiffs, without specifying any precise location. *Id.*

As to TIG's first objection, this interrogatory is not premature. *See Cogburn v. Sunbeam Prod., Inc.*, No. 2:18-CV-1223-TLN-DMC, 2021 WL 492115, at *11 (E.D. Cal. Feb. 10, 2021) (holding that an identical interrogatory was not premature because "[t]he ongoing nature of discovery requires parties to supplement their discovery responses as more information becomes

available," rather than "avoiding all discovery until discovery is complete"). As to its second objection, TIG relies on language in an order from this district. *See KIC LLC v. Zhejiang Dicastal Hongxin Tech. Co.*, No. 3:19-CV-05660-RBJ, 2020 WL 5653336, at *1 (W.D. Wash. Sept. 23, 2020). The court merely repeated the party's objection that parties cannot seek a "dress rehearsal" of their opponent's case at trial; the court did not provide any further discussion for that proposition. *Id.* at *5. Thus, TIG's second objection is unpersuasive. For its third objection, TIG provides no argument for how this interrogatory runs afoul of the attorney-client privilege or work-product doctrine. And TIG's assertion that the factual bases for its affirmative defenses may be found in the entire claims file, without specification, is insufficient under Rule 33(d). *See Wilson v. Washington*, No. C16-5366-BHS, 2017 WL 518615, at *3 (W.D. Wash. Feb. 8, 2017) (interrogatory responses were deficient under Rule 33(d) because defendants did not "provide any mechanism, such as a table of contents or summarization, whereby Plaintiff's counsel could locate and identify responsive documents as effectively as the Defendants").

C.    RFP Motion

In their RFP Motion, Plaintiffs request TIG supplement its discovery related to Plaintiffs' 51 RFPs. Dkt. # 81. *See* Dkt. # 45-39. On August 17, 2022, the Court issued an Order requiring the parties to submit a joint motion under Local Civil Rule 37(a)(2) for any renewed motion about Plaintiffs' RFPs. Dkt. # 63 at 10. Local Civil Rule 37(a)(2) requires the movant to: (1) identify each disputed discovery request; (2) include "the opposing party's objection/response thereto . . . in the submission"; (3) "prepare a proposed order"; and (4) "certify in the motion that [the movant] has complied with these requirements," among other requirements. LCR 37(a)(2).

The second motion does not comply with the Court's August 17 order and Rule 37(a)(2). It neither identifies the disputed RFPs nor includes any response from TIG. The motion contains only Plaintiffs' introductory statement. Dkt. # 82. *See* LCR(a)(2)(B).

# V.

## CONCLUSION

Based on the reasons above, the Court GRANTS Plaintiffs' ROG Motion in part and ORDERS TIG to respond to Interrogatories 9 and 20 within ten days of this Order.[6]  Dkt. # 81. For Interrogatory 7, the Court ORDERS TIG to produce the operative claims handling guidelines they offered to produce, subject to a protective order.  The Court ORDERS the parties to immediately meet and confer to draft a stipulated proposed protective order.  The Court DENIES Plaintiffs' ROG Motion in all other respects.  *Id.*  The Court DENIES Plaintiffs' RFP Motion. Dkt. # 82.

Dated this 24th day of October, 2022.

John H. Chun
United States District Judge

---

[6] District courts may properly refuse to re-construct vague or confusing interrogatories. *See Am. C.L. Union v. Gonzales*, 237 F.R.D. 120, 127 (E.D. Pa. 2006) (declining to compel a response to fatally vague and confusing interrogatories and stating, "I do not view the court's task to include re-wording these interrogatories").  But given the limited nature of Interrogatory 9's vagueness and confusion, the Court is compelling a response.  And the Court STRIKES the term "delicate" from the request. And regarding Interrogatory 20, the Court STRIKES the phrase, "particulars for the"; TIG must provide the factual basis for each affirmative defense.

ORDER - 11