1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MATTHEW BECKER, et al.,

                Plaintiffs,

     v.

TIG INSURANCE CO., et al.,

                Defendants.

CASE NO. 3:21-cv-05185-JHC

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

**I**

**INTRODUCTION**

      This matter comes before the Court on: (1) Plaintiffs' First Motion for Partial Summary Judgment, Dkt. # 59, and (2) Defendant TIG Insurance Company's ("TIG") Motion for Summary Judgment, Dkt. # 95. The Court has considered the motions filed in support of, and in opposition to, the motions, and the balance of the case file. Being fully advised, and for the reasons below, the Court DENIES Plaintiffs' motion and GRANTS in part and DENIES in part TIG's motion.

## II

### BACKGROUND

This case concerns an insurance coverage dispute in which Plaintiffs, assignees of Highmark Homes LLC, assert claims for relief against a group of insurance carrier defendants. Dkt. # 2 at 2–3. Plaintiffs are 45 owners of 30 homes in the East Park housing development in Bremerton, Washington. *Id.* at 5–8. Highmark was a general contractor for the construction of homes in the development. *Id.* at 1457.

TIG, as successor by merger to American Safety Indemnity Company ("ASIC"),[1] issued three general commercial liability policies to Highmark. *Id.* at 2–3, 8. These policies covered the three-year period from July 17, 2010, to July 17, 2013. *Id.* at 8, 149–228, 249–335; Dkt. # 45-70 at 32–97. HDI Global Specialty SE, f/k/a International Insurance Company of Hannover SE ("Hannover"), another insurer, issued two general commercial liability policies to Highmark, covering the two-year period from July 17, 2013, to July 17, 2015. Dkt. # 2 at 1654–55. TIG's policies cover "sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage.'" Dkt. # 2 at 53, 252; Dkt. # 45-70 at 35. Notably, they exclude coverage for property damage to any "tract housing project or development" of 25 or more homes. Dkt. # 2 at 217, 316; Dkt. # 45-70 at 95.

On November 28, 2016, 46 East Park homeowners filed a construction defect suit against Highmark in Kitsap County Superior Court ("East Park Suit"), bringing claims for breach of contract, breach of the implied warranty of habitability, violation of the Washington Consumer

---

[1] Consistent with the parties' briefing, and given the merger, this Order generally construes ASIC's policies, communications, and actions as those of TIG. The exception is in the discussion below about *Hay v. American Safety Indemnity Co.*, 270 F. Supp. 3d 1252 (W.D. Wash. 2017), *aff'd*, 752 F. App'x 460 (9th Cir. 2018).

Protection Act ("CPA"), and negligent misrepresentation.[2]  Dkt # 2 at 646–55.  *See Matthew Becker et al. v. Highmark Homes LLC et al.*, Kitsap County, Washington, Superior Court cause number 16-2-02165.  On July 21, 2017, Highmark tendered its defense to TIG through Highmark's attorney, Patrick McKenna at the law firm of Gillaspy & Rhode.[3]  Dkt. # 50-23 at 2.  Within days, TIG acknowledged receipt of the claim and began its investigation.[4]  *Id.* at 2–10;  Dkt. # 45-70 at 275–76.  On August 16, 2017, TIG sent Highmark a letter summarizing the claim and informing that it would "investigate this claim under a full reservation of rights."  Dkt. # 45-16 at 2–3, 21.  TIG identified various exclusions contained in its policies that might exclude coverage.  *Id.* at 7–21.  One exclusion, the Condominium, Apartment, Townhouse or Tract Housing Coverage Limitation Endorsement ("CATT exclusion"), states:

> This insurance does not apply to:
> Condominium, Apartment and Townhouse
> "Bodily injury", "property damage" or "personal and advertising injury" however caused, arising, directly or indirectly, out of, or related to an insured's or an insured's subcontractors' operations, "your work", or "your product" that are incorporated into a condominium, apartment or townhouse project. This exclusion applies only to projects that exceed 25 units. . . .
> Tract Housing
> "Bodily injury", "property damage" or "personal and advertising injury" however caused, arising, directly or indirectly, out of, or related to an insured's or an insured's subcontractors' operations, "your work", or "your product" that are incorporated into a "tract housing project or development". . . .
> "Tract housing" or "tract housing project or development" means any housing project or development that includes the construction, repair or remodel of twenty-

---

[2] The initial complaint in the East Park Suit was brought by 46 plaintiffs who owned 26 homes. Dkt. # 2 at 647–50. That complaint and this case have 29 plaintiffs in common. *Id.* at 1–2, 646–47. On March 2, 2018, the East Park Suit plaintiffs filed a second amended complaint ("SAC"), brought by 45 plaintiffs who owned 31 homes in the East Park development. *Id.* at 1545–49. The plaintiffs listed in the SAC are the same 45 Plaintiffs before the Court in this case. *Id.* at 1–2, 1545–46.

[3] Sometime before July 21, 2017, Highmark tendered its defense of the East Park Suit to Hannover. Dkt. # 95 at 4. Hannover agreed to defend Highmark subject to a reservation of rights and retained the firm Gillaspy & Rhode to represent Highmark. Dkt. # 45-69 at 2.

[4] Most of TIG's communications described in this Order were through its claims analysts at RiverStone Claims Management, LLC, a third-party claims handling company. For purposes of this Order, the Court considers communications to or from RiverStone to be communications to or from TIG.

five (25) or more residential buildings by our insured in any or all phases of the
project or development.

*Id.* at 11–12; Dkt. # 2 at 217, 316; Dkt. # 45-70 at 95.  Although TIG's letter did not expressly

accept or deny Highmark's tender of defense, it identifies itself as a "Reservation of Rights and

Denial." Dkt. # 45-16 at 22–23.

Between August and October 2017, TIG communicated with McKenna about the status

of Highmark's defense in the East Park Suit.  Dkt. # 45-70 at 318–20; Dkt. # 68-5 at 2.  In

November, TIG retained the law firm Morrow & White to assist Gillaspy & Rhode in the

defense of Highmark.  Dkt. # 45-71 at 79–82.  Over the next six months, TIG communicated

with its counsel about the status of Highmark's defense, including confirming that McKenna

would attend a July 2018 mediation on Highmark's behalf.  Dkt. # 68-1 at 2–4.

During the East Park Suit litigation, a separate group of homeowners in another

Washington housing development sued Highmark in Pierce County Superior Court.  *See Hay v.*

*Highmark, et al.*, Pierce County, Washington, Superior Court cause number 14-2-08793-0.

Those plaintiffs then filed an action in this district against ASIC, TIG's predecessor, bringing

claims for breach of contract, bad faith, and violations of the Insurance Fair Conduct Act

("IFCA") and CPA.  *See Hay v. Am. Safety Indem. Co.*, 270 F. Supp. 3d 1252, 1255 (W.D.

Wash. 2017), *aff'd*, 752 F. App'x 460 (9th Cir. 2018).  On September 19, 2017, the court granted

summary judgment in ASIC's favor, focusing on the same CATT exclusion at issue here.  *Id.* at

1258–60.  The court held that the CATT exclusion applied because it "clearly and

unambiguously excludes a housing project or development of 25 homes or more," and the

plaintiffs owned 29 homes in the development.  *Id.* at 1260.  With respect to the East Park Suit,

TIG's internal notes from July 2018 state: "Based on the identification of 26 Plaintiffs in this

Complaint, and the CATT limiting endorsement (excluding coverage for projects of 25 or more

residential buildings) in all 3 policies, [it] appears we may have been erroneously defending Insured in [this] action."  Dkt. # 45-71 at 114.

On November 15, 2018, the Ninth Circuit affirmed the lower court's decision in *Hay*. *Hay v. Am. Safety Indem. Co.*, 752 F. App'x 460, 462 (9th Cir. 2018).  The same day, in connection with the East Park Suit, TIG sent Highmark a letter denying coverage:

> While [TIG] previously agreed to provide a defense to Highmark under the Policies, . . . we must now advise you that [TIG] has determined there is no potential for coverage in this matter for Highmark for the above-referenced loss and [TIG] will therefore be withdrawing its defense of Highmark effective 30 days from the date of this letter.  This is based on all Policies containing the [CATT exclusion].  It is our understanding that Highmark's insurance carrier, Han[n]over, is continuing to provide a defense to Highmark in this matter.

Dkt. # 2 at 1594.  TIG's subsequent withdrawal letter states, "Withdrawal of the defense of Highmark in this matter by [TIG] is further supported by the recent Appellate decision in *Maureen Hay v.* [*ASIC*].  *Id.* at 1624–25.

On November 19, 2018, Plaintiffs and Highmark entered into a settlement agreement to resolve cases against Highmark, including the East Park Suit, contingent on funding provided by Highmark's insurers.  *Id.* at 1606–07.  Hannover later agreed to pay part of the settlement; TIG apparently refused to contribute.  *Id.* at 1655.  On April 24, 2019, as consideration for Hannover's payment, Plaintiffs, Highmark, Highmark's owner, Hannover, and a subcontractor entered into a settlement agreement in which Plaintiffs released all claims against the other settling parties.  *Id.* at 1654–56, 1693.  Under the 2019 settlement agreement, Highmark assigned to Plaintiffs "any and all insurance claims Highmark . . . ha[s] or may acquire in the future against insurers other than Hannover related to the claims in the East Park Suit."  *Id.* at 1655.

On March 12, 2021, Plaintiffs filed their complaint in this case.  On March 23, Plaintiffs filed their amended complaint.  Dkt. # 2 at 64.  Plaintiffs bring claims against TIG in their

capacities as assignees of Highmark.[5]  *Id.* at 2, 1654.  As to TIG, Plaintiffs seek declaratory relief and assert claims for breach of contract, bad faith, negligent misrepresentation, negligence, estoppel,[6] and violations of the Washington Administrative Code ("WAC"), CPA, and IFCA.  *Id.* at 43–61.  The parties now cross-move for summary judgment.  Dkts. ## 59, 95.  TIG seeks dismissal of all claims, while Plaintiffs' motion concerns their claims for breach of contract, bad faith, and estoppel.  *Id.*

### III

### DISCUSSION

A.    Summary Judgment Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is "material" if it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" if a reasonable jury could disagree about whether the facts claimed by the moving party are true.  *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983).

When cross motions are at issue, the court must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences."  *ACLU of Nev. V.*

---

[5] TIG purports to dispute whether Plaintiffs are assignees of Highmark, but it provides no analysis or argument on the issue.  Dkt. # 95 at 7; Dkt. # 110 at 5.

[6] Plaintiffs' first amended complaint lists "estoppel" as a cause of action.  Dkt. # 2 at 61 (TIG "is estopped from denying or limiting coverage due to its breach of the duty to defend and other actions and conduct.").  Coverage by estoppel is a remedy for an insurer's bad faith, not an independent cause of action.  *United Servs. Auto. Ass'n v. Speed*, 179 Wash. App. 184, 203, 317 P.3d 532 (2014); *Safeco Ins. Co. of Am. v. Butler*, 118 Wash. 2d 383, 393, 823 P.2d 499 (1992).  But equitable estoppel is a cause of action.  *Northside Auto Serv., Inc. v. Consumers United Ins. Co.*, 25 Wash. App. 486, 488, 607 P.2d 890 (1980).  It is unclear whether Plaintiffs advance both theories or just one.  As a result, the Court considers both below.

*City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006) (internal citations omitted).  If the

moving party bears the burden of proof on a claim, it "must show that the undisputed facts

establish every element of the claim."  *Chiron Corp. v. Abbott Lab'ys*, 902 F. Supp. 1103, 1110

(N.D. Cal. 1996).  But "[w]here the non-moving party bears the burden of proof at trial, the

moving party need only prove that there is an absence of evidence to support the non-moving

party's case."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  Then, the non-

moving party bears the burden of designating "specific facts demonstrating the existence of

genuine issues for trial."  *Id.*

B.      Breach of Contract

        Washington law governs this diversity action.[7]  In Washington, courts "interpret

insurance policy provisions as a matter of law."  *Am. Best Food, Inc. v. Alea London, Ltd.*, 168

Wash. 2d 398, 404, 229 P.3d 693 (2010).  "The insured bears the burden of showing that

coverage exists; the insurer, that an exclusion applies."  *Hill & Stout, PLLC v. Mut. of Enumclaw

Ins. Co.*, 200 Wash. 2d 208, 218, 515 P.3d 525 (2022) (quoting *Mut. of Enumclaw Ins. Co. v.

T&G Constr., Inc.*, 165 Wash. 2d 255, 268, 199 P.3d 376 (2008)).  "When interpreting an

insurance policy, we give the language its plain meaning, construing the policy as the average

person purchasing insurance would."  *Robbins v. Mason Cnty. Title Ins. Co.*, 195 Wash. 2d 618,

626, 462 P.3d 430 (2020).  The Court interprets any ambiguity in the insurance policy in favor of

the insured.  *Id.* at 434–35.  But "where the policy language is clear and unambiguous,

_____

        [7] "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and
federal procedural rules."  *Cuprite Mine Partners LLC v. Anderson*, 809 F.3d 548, 554 (9th Cir. 2015).
This Court applies Washington law as it believes the Washington State Supreme Court would have
applied it.  *See Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003).
Without case law from the state's high court, the Court determines how Washington's high court would
rule using intermediate appellate court decisions.  *Id.*

[Washington courts] will not modify the contract or create ambiguity where none exists." *Xia v. ProBuilders Specialty Ins. Co.*, 188 Wash. 2d 171, 182, 400 P.3d 1234 (2017).

Plaintiffs allege that TIG breached its contract with Highmark by failing to indemnify and defend Highmark. Dkt. # 2 at 48. TIG contends that because of the CATT exclusion, it owed no duty to indemnify or defend Highmark. Dkt. # 95 at 8.

1.      CATT exclusion

The CATT exclusion applies to property damage "however caused, arising, directly or indirectly, out of, or related to" an insured or insured subcontractor's work that is: (1) "incorporated into a condominium, apartment or townhouse project . . . that exceed[s] 25 units"; or (2) "incorporated into a 'tract housing project or development.'" Dkt. # 2 at 217, 316; Dkt. # 45-70 at 95. The policies define "tract housing project or development" as "any housing project or development that includes the construction, repair or remodel of twenty-five (25) or more residential buildings by our insured in any or all phases of the project or development." *Id.*

Washington courts strictly construe exclusionary clauses against insurers. *Hill & Stout*, 200 Wash. 2d at 225. But "a strict application should not trump the plain, clear language of an exclusion such that a strained or forced construction results. . . . [I]n Washington the expectations of the insured cannot override the plain language of the contract." *Kut Suen Lui v. Essex Ins. Co.*, 185 Wash. 2d 703, 712, 375 P.3d 596 (2016) (quoting *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wash. 2d 165, 172, 110 P.3d 733 (2005)). Based on the plain language, the CATT exclusion applies. It is undisputed that Highmark constructed at least 26 homes in the East Park development,[8] in excess of the exclusion's limit of 25. Dkt. # 45-71 at 115.

---

[8] The number of homes owned by Plaintiffs that Highmark constructed in the East Park development has fluctuated between 26 and 31 homes throughout these proceedings in state and federal court. Dkt. # 2 at 5–8, 647–50, 1545–49. *See supra* text accompanying note 2.

Plaintiffs offer two arguments that the CATT exclusion does not apply. Both are unconvincing. Plaintiffs first draw on the initial East Park Suit complaint that identified 26 homes. Dkt. # 2 at 647–50; Dkt. # 108 at 3. Plaintiffs correctly note how TIG's policies covered Highmark's construction of "one or two family dwellings." Dkt. # 45-70 at 188. Plaintiffs appear to argue that the 26 homes in the East Park development could have been two-family dwellings, and that Highmark's construction of 13 two-family homes would not trigger the CATT exclusion's limit of 25. Dkt. # 108 at 3, 12–14. But Plaintiffs do not contend that Highmark constructed 13 two-family homes. *Id.* And even if Highmark had constructed 13 two-family homes, the CATT exclusion would still apply. Besides the "tract housing" provision, the exclusion applies equally to claims for "condominium, apartment or townhouse" projects that exceed 25 "units." Dkt. # 2 at 217, 316; Dkt. # 45-70 at 95. Assuming the East Park development consisted of 13 two-family homes, the CATT exclusion would still apply because the project would contain 26 units.

Second, Plaintiffs appear to argue that the CATT exclusion does not apply because Highmark built only 18 homes during a single policy year, below the limit of 25.[9] Dkt. # 108 at 24–25. The plaintiffs in *Hay* challenged the CATT exclusion on this basis, and the district court rejected the argument:

> Plaintiffs contend that the exclusion only applies if all 25 or more homes were completed within a single policy year. They assert that the construction of the homes at issue took place over more than a single policy year, so the exclusion doesn't apply. The plain language of the policy doesn't support this interpretation. The exclusion doesn't contain any time limits, and instead specifically provides that coverage is excluded at "in any or all phases of the project or development."

---

[9] Plaintiffs do not provide a citation to the record as to whether only 18 homes were built during a particular policy year. Dkts. ## 108, 59, 69. TIG apparently does not dispute this fact. Dkt. # 110 at 4–5.

270 F. Supp. 3d at 1259 (internal citations omitted) (quoting CATT exclusion).  On this point, this decision appears correct.  The CATT exclusion denies coverage for any "tract housing project or development . . . in any or all phases of the project or development."  Dkt. # 2 at 217, 316; Dkt. # 45-70 at 95.  The plain language of the exclusion does not suggest that it applies only if 25 or more homes are completed within a single policy year.

In sum, the CATT exclusion applies to the insurance policies TIG issued to Highmark.

2.      Duty to indemnify

"An insurance company has the duty to indemnify if the insurance policy *actually* covers the insured." *Robbins*, 195 Wash. 2d at 626 (emphasis in original).  Because the application of the CATT exclusion precludes the policies' coverage of Highmark, TIG did not breach its policies in declining to indemnify Highmark.

3.      Duty to defend

Next, the Court must decide whether TIG had a duty to defend Highmark and if so, whether TIG breached its duty.

a.      Scope of duty

Whether a claim triggers a duty to defend is a question of law.  *Woo v. Fireman's Fund Ins. Co.*, 161 Wash. 2d 43, 52, 164 P.3d 454 (2007).  An insurer's duty to defend is "one of the principal benefits of the liability insurance policy." *Id.* at 54.  In Washington, the duty to defend is "different from and broader than the duty to indemnify." *Xia*, 188 Wash. 2d at 182 (quoting *Am. Best Food*, 168 Wash. 2d at 404).  "The duty to defend 'arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage.'" *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wash. 2d 751, 760, 58 P.3d 276 (2002) (quoting *Unigard Ins. Co. v. Leven*, 97 Wash. App. 417, 425, 983 P.2d 1155 (1999)).  An insurer must defend its insured unless the alleged claim in the complaint

is clearly not covered by the insurance policy. *Am. Best Food*, 168 Wash. 2d at 405. "[I]f there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." *Id.* at 413. Washington courts construe "ambiguous complaint[s] liberally in favor of triggering the duty to defend." *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wash. 2d 793, 803, 329 P.3d 59 (2014).

The duty to defend is generally determined from the "eight corners" of the complaint against the insured and the insurance contract. *Id.* Two exceptions exist, both favoring the insured. *Id.* "First, if coverage is not clear from the face of the complaint but could exist, the insurer must investigate and give the insured the benefit of the doubt on the duty to defend." *Id.* Second, if the complaint's allegations are ambiguous or conflict with facts known to the insurer, courts may consider facts extrinsic to the complaint. *Id.* But "these extrinsic facts may only be used to trigger the duty to defend; the insurer may not rely on such facts to deny its defense duty." *Id.* Because courts must decide whether a claim triggers the duty to defend based on allegations in the complaint, "whether or not a court subsequently finds no duty to indemnify is irrelevant to the existence of a duty to defend." *Speed*, 179 Wash. App. at 196; *see Woo*, 161 Wash. 2d at 52 (noting that the duty to defend arises when the claim is first brought).

b.    Application to the East Park Suit complaint and TIG's policies

TIG says that the application of the CATT exclusion relieves TIG of its duty to defend Highmark. Dkt. # 95 at 8–10. TIG asks the Court to follow the *Hay* decisions, which both conclude that TIG had no duty to defend Highmark in a separate construction defect suit because of the application of the same CATT exclusion. *Hay*, 270 F. Supp. 3d at 1259–60; *Hay*, 752 F. App'x at 461–62. While the facts in *Hay* are much like those here, the Court rejects this request for two reasons.

First, the *Hay* decisions are extrinsic facts that postdate the filing of the East Park Suit, and "the duty to defend is determined by the facts known at the time of the tender of defense." *George Sollitt Corp. v. Howard Chapman Plumbing & Heating, Inc.*, 67 Wash. App. 468, 472, 836 P.2d 851 (1992).  On September 19, 2017, the district court issued its decision in *Hay*, and the Ninth Circuit affirmed on November 15, 2018.  *Id.*  When TIG received Highmark's tendered claim in July 2017, the decision about whether TIG owed Highmark a duty to defend had to be based on the East Park Suit complaint and TIG's policies issued to Highmark, not later court decisions in a different matter.  *See Kirk v. Mt. Airy Ins. Co.*, 134 Wash. 2d 558, 561, 951 P.2d 1124 (1998) ("The duty to defend arises whenever a lawsuit is filed against the insured alleging facts and circumstances arguably covered by the policy.").

Second, the facts in *Hay* differ from this case to such a degree that the Court does not find the claims here, at the time of tender, were clearly not covered by TIG's policies.  *See Truck Ins. Exch.*, 147 Wash. 2d at 760 ("Only if the alleged claim is clearly not covered by the policy is the insurer relieved of its duty to defend.").  In its analysis of the duty to defend, the *Hay* court stated:

> ASIC did not breach its duty to defend Highmark.  In the complaint in the underlying case, the Plaintiffs asserted that Highmark "constructed 29 homes located within Valley Haven project development, in Fife, Washington" and "sold 29 homes located within Valley Haven project development, in Fife, Washington." The policy clearly and unambiguously excludes a housing project or development of 25 homes or more.  There is no reasonable interpretation of the policy or complaint that could result in coverage.

*Hay*, 270 F. Supp. 3d at 1260 (internal citations omitted).  And before denying Highmark's tender in *Hay*, ASIC confirmed that Highmark had in fact built all 29 homes identified in the complaint.  *Id.*

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

While TIG's policies contain the same CATT exclusion as in *Hay*, the East Park Suit complaint is vague in comparison.[10]  The East Park Suit complaint identifies 26 homes, in excess of the exclusion's limit of 25.  Dkt. # 2 at 647–50.  But the complaint does not explicitly allege that Highmark constructed or sold all 26 homes, as did the *Hay* complaint.  270 F. Supp. 3d at 1260.  Instead, the East Park Suit complaint names Highmark as one defendant, among other defendants, including "JOHN DOE COMPANIES."  The complaint alleges that "Defendant or Defendants constructed homes located within the East Park project development," and that "Highmark marketed and sold homes located within the East Park development."  Dkt. # 2 at 650.

To trigger the CATT exclusion and lead the Court to find no duty to defend existed from the outset, the East Park Suit complaint must identify a "housing project or development that includes the construction, repair or remodel of twenty-five (25) or more residential buildings by our insured."  Dkt. # 2 at 217, 316; Dkt. # 45-70 at 95.  The East Park Suit complaint does not suggest that Highmark constructed all 26 homes in the East Park development.  If Highmark did not construct two of those homes, the CATT exclusion would not apply.  TIG's August 16, 2017 letter to Highmark supports a finding that TIG had not yet confirmed whether Highmark constructed all 26 homes: "We understand this claim currently involves 26 homes in a single project known as East Park.  [TIG] reserves its right to deny coverage based on the [CATT] exclusion upon completion of [TIG]'s investigation."  Dkt. # 45-16 at 12.  Because the East Park Suit complaint "alleges facts which could, if proven, impose liability upon the insured within the

_____

[10] Because the duty to defend is based on facts known when Highmark tendered its defense to TIG in July 2017, the Court reviews the initial East Park Suit complaint, not the SAC filed in 2018.  *See George Sollitt Corp.*, 67 Wash. App. at 472; *see also* Dkt. # 2 at 647–50, 1545–49.

policy's coverage," the Court concludes that TIG had a duty to defend Highmark in the East Park Suit. *Unigard*, 97 Wash. App at 425.

### c. Breach of duty

If a duty to defend exists, the insurer must defend until there is a determination of no coverage. *Am. Best Food,* 168 Wash. 2d at 405. In their motion, Plaintiffs contend that TIG's failure to accept the tender of defense of Highmark in TIG's August 16, 2017 letter to Highmark was a breach the duty to defend. Dkt. # 59 at 25–26. TIG counters that it never owed a duty to defend and that its letter asserted a reservation of rights that "did not expressly grant or deny Highmark's tender of defense." Dkt. # 67 at 4-5; Dkt. # 95 at 8–10. Under Washington law, an insurer in receipt of a claim tendered by its insured has three options: defend, defend under a reservation of rights, or deny its duty to defend. *See, e.g.*, *Nat'l Sur. Corp. v. Immunex Corp.*, 176 Wash. 2d 872, 879, 297 P.3d 688 (2013); *Woo*, 161 Wash. 2d at 52–54; *Truck Ins. Exch.*, 147 Wash. 2d at 759–62. TIG apparently asserts that it did not follow any of these courses of action. Dkt. # 67 at 4–5; Dkt. # 95 at 8–10.

If an insurer is unsure about its duty to defend, it may defend "under a reservation of rights and seek a declaratory judgment that it has no duty to defend." *Woo*, 161 Wash. 2d at 54; *see Am. Best Food*, 168 Wash. 2d at 405 ("When the facts or the law affecting coverage is disputed, the insurer may defend under a reservation of rights until coverage is settled in a declaratory action."). If an insurer asserts a reservation of rights, "the insured receives the defense promised and, if coverage is found not to exist, the insurer will not be obligated to pay." *Kirk,* 134 Wash. 2d at 563 n. 3. Washington case law mandates "notice to the insured that the insurer will defend under a reservation of rights." *Van Dyke v. White*, 55 Wash. 2d 601, 607, 349 P.2d 430 (1960). TIG's August 16, 2017 letter does not appear to assert a reservation of rights because it does not say that TIG will defend Highmark. *See* Dkt. # 45-16. TIG also did not seek

1   a declaratory judgment that it had no duty to defend Highmark after asserting its purported
2   reservation of rights.

3       Issues of material fact preclude summary judgment in either side's favor as to whether
4   TIG's August 6, 2017, letter denied its duty to defend.  Failure to defend would breach the duty
5   to defend that TIG owed Highmark.  *See Kirk*, 134 Wash. 2d at 561.  The record is inconsistent
6   as to the effect of TIG's August 6, 2017 letter.  TIG's letter twice describes itself as a
7   "Reservation of Rights and Denial."  Dkt. # 45-16 at 22–23.  But TIG's later November 2018
8   letter denying coverage states that TIG "previously agreed to provide a defense to Highmark
9   under the Policies."  Dkt. # 2 at 1594.  TIG appears to maintain that the letter was neutral, in that
10  it "did not expressly grant or deny Highmark's tender of defense."  Dkt. # 95 at 5.

11      Notably, the record is also inconsistent as to whether TIG began to defend Highmark in
12  2017.  Plaintiffs say TIG "submitted" their defense of Highmark in December 2017, relying on
13  an invoice the firm Gillaspy & Rhode sent to the firm Morrow & White for services the former
14  rendered between December 2017 and February 2018.  Dkt. # 59 at 5; Dkt. # 69 at 3–4; Dkt. #
15  50-28 at 1–7.  But in another instance, Plaintiffs assert that "TIG was not defending Highmark
16  because it was not paying for the defense of Highmark."  Dkt. # 108 at 16.  TIG apparently
17  believes that it began its defense of Highmark at some point between July and November 2017,
18  Dkt. # 95 at 5, notwithstanding the "Reservation of Rights and Denial" TIG issued in August
19  2017, Dkt. # 45-16 at 22–23.

20      In sum, the Court concludes that the CATT exclusion applies and TIG had no duty to
21  indemnify Highmark.  But summary judgment either way is improper as to the breach of TIG's
22  duty to defend Highmark.

23
24

C.      Claims for Extracontractual Liability

Plaintiffs ask the Court to rule as a matter of law that TIG is liable for bad faith.  Dkt. #

59 at  11–26.  TIG seeks dismissal of Plaintiffs' claims for bad faith and violations of IFCA,

CPA, and WAC.[11]  Dkt. # 95 at 10–12.

"[A]n insured may maintain an action against its insurer for bad faith investigation of the

insured's claim and violation of the CPA regardless of whether the insurer was ultimately correct

in determining coverage did not exist."  *Coventry Assocs. v. Am. States Ins. Co.*, 136 Wash. 2d

269, 279, 961 P.2d 933 (1998).  This is true because "[a]n insurer's duty of good faith is separate

from its duty to indemnify if coverage exists."  *Id.*

1.      Bad faith

In Washington, insurers must deal fairly and in good faith with their insureds.  RCW

40.01.030.  "The duty to act in good faith or liability for acting in bad faith generally refers to the

same obligation," and these terms are used interchangeably.  *Kosovan v. Omni Ins. Co.*, 19

Wash. App. 2d 668, 683, 496 P.3d 347 (2021) (quoting *Tank v. State Farm Fire & Cas. Co.*, 105

Wash. 2d 381, 394, 715 P.2d 1133 (1986)).  Bad faith is a tort with four elements: duty, breach

of that duty, and damages proximately caused by the breach.  *Smith v. Safeco Ins. Co.*, 150

Wash. 2d 478, 485, 78 P.3d 1274 (2003).  "Claims of bad faith are not easy to establish," and the

insured, who bears the burden of proof, has a "heavy burden to meet."  *Overton v. Consol. Ins.*

---

[11] Plaintiffs' first amended complaint includes claims for negligence and negligent misrepresentation, but Plaintiffs did not mention these claims in response to TIG's motion for summary judgment.  As a result, Plaintiffs have abandoned their negligence and negligent misrepresentation claims. *See Seaway Properties, LLC v. Fireman's Fund Ins. Co.*, 16 F. Supp. 3d 1240, 1252 (W.D. Wash. 2014) (concluding that the plaintiff abandoned its negligence claim in an insurance action when the plaintiff failed to mention that claim in response to the defendant's summary judgment motion).  Plaintiffs' first amended complaint also lists declaratory relief as a cause of action.  Dkt. # 2 at 44.  Declaratory relief is a remedy, not an independent cause of action.  *Lorona v. Arizona Summit L. Sch., LLC*, 151 F. Supp. 3d 978, 997 (D. Ariz. 2015).  Plaintiffs' claim for declaratory relief survives only if the remaining claims warrant such relief.  *Progeny Ventures, Inc. v. W. Union Fin. Servs., Inc.*, 752 F. Supp. 2d 1127, 1135 (C.D. Cal. 2010).

*Co.*, 145 Wash. 2d 417, 433, 38 P.3d 322 (2002); *see Smith*, 150 Wash. 2d at 486.  "An insurer acts in bad faith if its breach of the duty to defend was unreasonable, frivolous, or unfounded." *Am. Best Food*, 168 Wash. 2d at 412.  An insured need not show intentional bad faith or fraud; an insurer's bad faith is acting without reasonable justification.  *Kosovan*, 19 Wash. App. 2d at 684.  "Whether an insurer acted in bad faith is a question of fact."  *Smith*, 150 Wash. 2d at 484.

Plaintiffs' motion and their opposition to TIG's motion identify five categories of TIG's actions that Plaintiffs say were committed in bad faith.[12]  The Court considers each below.

> a.      Gillaspy & Rhode's services

First, Plaintiffs say TIG acted in bad faith whenever it requested that the firm Gillaspy & Rhode perform tasks on TIG's behalf.  Dkt. # 108 at 16–17.  Plaintiffs assert that Hannover, one of Highmark's insurers, paid for Gillaspy & Rhode's services.  *See* Dkt. # 45-69 at 2.  Plaintiffs stress that Highmark bought a "burning limits" insurance policy from Hannover—under which defense costs are paid directly from policy limits—without citation to the record.  Dkt. # 108 at 4.  Plaintiffs argue that TIG was "knowingly depleting" Hannover's policy limits so Highmark would have less funds for "litigation strategies and settlement."  *Id.* at 17.  In a similar vein, Plaintiffs say TIG committed bad faith "when it fired" Gillaspy & Rhode and retained other counsel, supposedly causing Hannover to pay a greater share of Gillaspy & Rhode's services.  *Id.* at 17–18.  Plaintiffs again fail to cite the record for this assertion.

Plaintiffs' unsupported assertions do not show that TIG's interactions with Gillaspy & Rhode breached TIG's duty to defend Highmark, much less that the breach was unreasonable.

---

[12] TIG states in its motion that it is entitled to summary judgment on Plaintiffs' claim for bad faith because TIG never owed Highmark a duty to defend.  Dkt. # 95 at 11–12.  Because of this Court's conclusion above that TIG had a duty to defend Highmark, this contention is rejected.  That said, the Court exercises its discretion to consider TIG's evidentiary material and arguments submitted in opposition to Plaintiffs' motion as bases for granting its motion for this claim.

*Am. Best Food*, 168 Wash. 2d at 412.  Because Plaintiffs have not presented evidence that TIG acted without reasonable justification in dealing with Gillaspy & Rhode, *Kosovan*, 19 Wash. App. 2d at 684, their bad faith claim about Gillaspy & Rhode's services fails as a matter of law.

        b.       August 16, 2017 letter

Second, Plaintiffs contend TIG sent its August 16, 2017, letter in bad faith by unreasonably denying Highmark's claim and TIG's duty to defend.  Dkt. # 59 at 20–25. Plaintiffs say TIG violated WAC 284-30-330(13), which requires insurers to "provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim."  *See Seaway Properties, LLC*, 16 F. Supp. 3d at 1253 ("Violation of Washington's insurance regulations is evidence of bad faith.").  According to Plaintiffs, TIG's denial letter was unreasonably vague in not providing analysis about why Plaintiffs' claim was not covered.  Dkt. # 59 at 20–25.  The Court need not further consider this argument; summary judgment either way is not proper for the bad faith claim based on the August 16, 2017 letter because, as indicated above, a material issue of fact exists as to whether TIG's letter even denied Highmark's claim for coverage.

        c.       Reasonableness of TIG's investigation

Third, Plaintiffs say that TIG's investigation of Highmark's claim was conducted in bad faith because TIG waited until November 15, 2018, to deny coverage,[13] after stating in its initial August 16, 2017, letter that TIG would "continue its investigation of this claim."  Dkt. # 108 at 18–20; Dkt. # 45-16 at 22.  Plaintiffs state that TIG "knowingly harmed" Highmark by delaying its investigation of Highmark's claim, which "continually drained Hannover's policy limits."

---

[13] Plaintiffs construe TIG's November 15, 2018 letter as TIG's second denial of coverage, after TIG's first denial on August 16, 2017.  Dkt. # 108 at 18–20.

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 18

1    Dkt. # 108 at 19.  The Court is unpersuaded by Plaintiffs' conclusory assertions, which lack

2    citations to the record.

3         Plaintiffs also contend that TIG intentionally delayed its investigation for strategic

4    reasons because it "did not want to divulge its analysis of its exclusion."  Dkt. # 59 at 19.  TIG

5    does not articulate why its investigation of Highmark's claim lasted so long, especially if it only

6    had to confirm that Highmark constructed the homes Plaintiffs identified in the East Park

7    development to trigger the CATT exclusion.  *See Coventry Assocs.*, 136 Wash. 2d at 281

8    (holding that insurers act in bad faith for failure to "conduct any necessary investigation in a

9    timely fashion and to conduct a reasonable investigation before denying coverage") (internal

10   citation omitted).  TIG's November 15, 2018, denial letter was issued on the same date the Ninth

11   Circuit affirmed *Hay*.  752 F. App'x at 462; Dkt. # 2 at 1594–1604.  And TIG's subsequent

12   withdrawal letter states, "Withdrawal of the defense of Highmark in this matter by [TIG] is

13   further supported by the recent Appellate decision in *Maureen Hay v. [ASIC]*."  Dkt. # 2 at 1624.

14        When viewing these facts in Plaintiffs' favor, a reasonable jury could find that TIG acted

15   in bad faith by waiting to issue its 2018 coverage decision until the Ninth Circuit had issued its

16   interpretation of the CATT exclusion in *Hay*, to ensure TIG's reasoning matched the Ninth

17   Circuit's.  Such a strategic decision to delay might place TIG's interests ahead of Highmark's in

18   investigating this claim.  *See Am. Best Food*, 168 Wash. 2d at 414 ("[A]n insurer may not put its

19   own interest above that of its insured.").  Due to Plaintiffs' motion, the Court must also view

20   these facts in TIG's favor and not infer that TIG's denial was strategic in evaluating the

21   reasonableness of TIG's investigation.  And Plaintiffs do not cite, and the Court cannot find,

22   authority suggesting that Washington adopts any time limit for insurers to conduct their

23   investigation of a claim in good faith.  Thus, summary judgment either way with respect to the

24   investigation is unwarranted.

1

2          d.      November 15, 2018 denial

3          Fourth, Plaintiffs maintain that TIG's November 15, 2018 denial was sent in bad faith

4   because it lacks sufficient analysis of how the CATT exclusion applies here.  Dkt. # 108 at 23–

5   24.  The Court disagrees.  "[A]n insurer's denial of coverage, without reasonable justification,

6   constitutes bad faith."  *Smith*, 150 Wash. 2d at 486.  If an insured claims its insurer denied

7   coverage in bad faith, the insurer must offer evidence that the insurer acted unreasonably.  *Id.*

8   But the "insurer is entitled to summary judgment if reasonable minds could not differ that its

9   denial of coverage was based on reasonable grounds."  *Id.*  TIG's denial letter states:

10
11          Through our investigation of this matter, we have learned and now understand that
            Highmark was the developer and/or the General Contractor for a minimum of 31
12          homes in the Subject Project. . . . The Complaint identifies 26 homes at issue in the
            Action.   Subsequently,  additional  home/Plaintiffs  were  added  to  this  matter,
13          bringing the total number of homes at issue in this matter to 31. . . . Highmark
            completed operations at a minimum of 31 homes in the Subject Project, which is in
14          excess of 25 homes permitted by the [CATT exclusion].  Therefore, [TIG] denies
            coverage under the Policies, in its entirety, to Highmark for this matter based on
15          the foregoing [CATT exclusion].

16   Dkt # 2 at 1595, 1603.  As stated above, the CATT exclusion applies and precludes coverage

17   because Highmark constructed over 25 homes in the East Park development.  Unlike TIG's

18   August 16, 2017 letter, this denial confirms that Highmark constructed the homes identified in

19   the complaint, and the number of homes exceeds the exclusion's limit of 25.  Plaintiffs do not

20   show how this analysis is lacking, nor do they offer other evidence of TIG's unreasonable

21   conduct with respect to this denial notice.  TIG's November 15, 2018 denial of coverage was

22   based on reasonable grounds, and Plaintiffs' bad faith claim on this basis fails as a matter of law.

23

24

1

            e.      TIG's withdrawal of defense

2      Finally, Plaintiffs contend TIG withdrew its defense of Highmark in bad faith.[14]  Dkt. #

3  108 at 20–23.  Plaintiffs say TIG committed "per se bad faith" when TIG sent its November 15,

4  2018 denial letter days before a November 19, 2018 mediation between Plaintiffs and insurers.

5  Dkt. # 108 at 21; Dkt. # 50-54.  Plaintiffs rely on *Transamerica Insurance Group v. Chubb &*

6  *Son*, 16 Wash. App. 247, 252, 554 P.2d 1080 (1976), for the proposition that an insurer commits

7  "per se bad faith" if the insurer withdraws its defense without judicial approval after defending

8  an insured for 10 months.  Dkt. # 108 at 20.  But that case concerns equitable estoppel, not bad

9  faith.  16 Wash. App. at 252–54.  TIG states that Plaintiffs' position "is not supported factually

10 or legally" and briefly discusses *Transamerica* and another equitable estoppel case.  Dkt. # 110

11 at 6–7.  *See R.A. Hanson Co., Inc. v. Aetna Cas. & Sur. Co.*, 15 Wash. App. 608, 610, 550 P.2d

12 701 (1976).

13     Because Plaintiffs bear the burden of proof at trial for their bad faith claim, *Smith*, 150

14 Wash. 2d at 486, TIG must prove that there is insufficient evidence to support Plaintiffs' case, *In*

15 *re Oracle Corp. Sec. Litig.*, 627 F.3d at 387.  Then, to avoid summary judgment in TIG's favor,

16 Plaintiffs must designate "specific facts demonstrating the existence of genuine issues for trial."

17 *Id.*  Plaintiffs do not point to any evidence creating a genuine issue of fact in response to TIG's

18 accurate assertion that this claim lacks evidentiary support.  Thus, summary judgment in TIG's

19 favor is proper, and Plaintiffs' claim that TIG withdrew its defense of Highmark in bad faith fails

20 as a matter of law.

21

22     ───────────────

        [14] Plaintiffs also say that TIG needed to obtain court approval before withdrawing TIG's
23  representation.  Dkt. # 108 at 22.  The case law Plaintiffs cite for this proposition does not suggest that
    such a requirement exists.  *See Truck Ins. Exchange*, 147 Wash. 2d at 764; *Butler*, 118 Wash. 2d at 391;
    *Mut. of Enumclaw Ins. Co.*, 165 Wash. 2d at 255; *Weyerhaeuser Co. v. Com. Union Ins. Co.*, 142 Wash.
24  2d 654, 689, 15 P.3d 115 (2000).

1

2.       Estoppel

2

Under the "traditional forms of estoppel available in insurance cases[,] . . . insureds must

3

demonstrate either that they suffered prejudice or that the insurer acted in bad faith." *Hayden v.*

4

*Mut. of Enumclaw Ins. Co.*, 141 Wash. 2d 55, 63, 1 P.3d 1167 (2000). *See Bosko v. Pitts & Still,*

5

*Inc.*, 75 Wash. 2d 856, 864, 454 P.2d 229 (1969) (traditional equitable estoppel requires

6

prejudice); *Kirk*, 134 Wash. 2d at 565 (holding that an "insurer's bad faith action creates the need

7

to presume harm and apply the coverage by estoppel remedy").

8

a.       Coverage by estoppel remedy

9

"If an insured prevails on a bad faith claim, the insurer is estopped from denying

10

coverage." *Aecon Bldgs., Inc. v. Zurich N. Am.*, 572 F. Supp. 2d 1227, 1234 (W.D. Wash. 2008).

11

The "coverage by estoppel" remedy creates "a strong incentive for the insurer to act in good

12

faith, and [to] protect[] the insured against the insurer's bad faith conduct." *Kirk*, 951 P.2d at

13

1128. But "in the absence of bad faith, coverage by estoppel does not apply." *Speed*, 179 Wash.

14

App. At 203. Plaintiffs contend that because of TIG's withdrawal days before the November 19,

15

2018 mediation, TIG "is estopped from denying coverage." Dkt. # 108 at 21. If Plaintiffs assert

16

TIG should be estopped from denying coverage due to TIG's withdrawal in bad faith, the Court

17

rejects this argument because of the above ruling that Plaintiffs' bad faith claim based on TIG's

18

withdrawal fails as a matter of law. But because certain bases for Plaintiffs' bad faith claim

19

survive summary judgment, estoppel remains an available remedy for Plaintiffs should they later

20

prevail in these claims.

21

b.       Equitable estoppel

22

It is unclear whether Plaintiffs' purported "estoppel" claim is a claim for equitable

23

estoppel. For the purpose of this Order, the Court assumes that Plaintiffs advance a claim for

24

equitable estoppel, taking the position that TIG should be estopped from denying coverage because TIG's withdrawal prejudiced Highmark.  *See* Dkt. # 108 at 21.

"Equitable estoppel is based on the notion that 'a party should be held to a representation made or position assumed where inequitable consequences would otherwise result to another party who has justifiably and in good faith relied thereon.'"  *GMAC v. Everett Chevrolet, Inc.*, 179 Wash. App. 126, 147, 317 P.3d 1074 (2014) (quoting *Lybbert v. Grant Cnty.*, 141 Wash. 2d 29, 35, 1 P.3d 1124 (2000)) (internal citation omitted).  Equitable estoppel requires proof of three elements: "(1) an admission, statement, or act inconsistent with a party's later claim; (2) action by another party in reasonable reliance on that admission, statement, or act; and (3) injury to that party when a court allows the first party to contradict or repudiate its admission, statement, or act."  *Rhoades v. City of Battle Ground*, 115 Wash. App. 752, 769, 63 P.3d 142 (2002).  The party asserting equitable estoppel must prove each element by "clear, cogent, and convincing evidence."  *Colonial Imports, Inc. v. Carlton Nw., Inc.*, 121 Wash. 2d 726, 736, 853 P.2d 913 (1993).

Plaintiffs only offer argument related to the last element—that TIG's withdrawal prejudiced Highmark.  *See* Dkt. # 108 at 21.  Plaintiffs do not offer evidence of inconsistent conduct by TIG on which Plaintiffs reasonably relied.  Thus, their equitable estoppel claim fails as a matter of law.  *See Chiron Corp.*, 902 F. Supp. at 1110 ("Where the moving party has the burden of proof on a claim . . . raised in a summary judgment motion, it must show that the undisputed facts establish every element of the claim. . . .").

3.     IFCA

TIG contends that Plaintiffs' IFCA claim fails as a matter of law because Plaintiffs failed to provide the mandatory pre-suit notice to TIG.  The Court agrees.  IFCA requires that 20 days before filing an IFCA action, a "claimant must provide written notice of the basis for the cause of

1   action to the insurer and office of the insurance commissioner."  RCW 48.30.015(8)(a).  "IFCA's

2   pre-suit notice provision is a mandatory condition precedent to an IFCA lawsuit."  *MKB*

3   *Constructors v. Am. Zurich Ins. Co.*, 49 F. Supp. 3d 814, 840 (W.D. Wash. 2014).  Other judges

4   of this court have similarly required strict adherence to IFCA's pre-suit notice provision.  *See,*

5   *e.g.*, *id.* ("numerous federal decisions have construed the provision to require dismissal of an

6   IFCA claim that a plaintiff brought without providing the prior statutory notice"); *Scottsdale Ins.*

7   *Co. v. LFH Care LLC*, No. C20-1026-JCC-MLP, 2021 WL 2458610, at *2 (W.D. Wash. Apr.

8   13, 2021) (dismissing IFCA counterclaim where defendants did not comply with pre-suit IFCA

9   notice); *Madera W. Condo. Ass'n v. First Specialty Ins. Corp.*, No. C12-0857-JCC, 2013 WL

10   4015649, at *4 (W.D. Wash. Aug. 6, 2013) (dismissing IFCA claim with prejudice at summary

11   judgment for failure to comply with the statutory notice requirement).

12       TIG never received its pre-suit IFCA notice, and Plaintiffs' response is silent on this

13   issue.  Dkt. # 96 at 2.  A party's failure to respond to a claim in an opposition to a motion for

14   summary judgment can waive that claim.  *See Abogados v. AT&T, Inc.*, 223 F.3d 932, 937 (9th

15   Cir. 2000).  Thus, Plaintiffs' IFCA claim fails as a matter of law.

16       4.       Remaining claims

17       Plaintiffs allege TIG's handling of Highmark's claim violated multiple provisions of the

18   WAC and constituted unfair and deceptive conduct in violation of the CPA.  Dkt. # 2 at 50–56.

19   TIG asks the Court to grant its motion as to Plaintiffs' claims for "breach of various WAC/CPA

20   provisions" because it did not owe Highmark a duty to defend in the East Park Suit due to the

21   CATT exclusion.  Dkt. # 95 at 11.  TIG states that its decision "not to contribute towards

22   settlement was reasonable," without more.  *Id.* at 12.  Neither party provides further argument

23   about these causes of action.  Because of this Court's ruling above that TIG had a duty to defend

24   Highmark, summary judgment in TIG's favor on this basis is inappropriate.  And as Plaintiffs'

1    motion does not address these claims, summary judgment in their favor is unwarranted for their

2    WAC and CPA claims.

3                                              IV

4                                        CONCLUSION

     For the above reasons, the Court ORDERS the following:

5
6    1. Plaintiffs' motion is DENIED.
     2. TIG's motion for summary judgment is GRANTED in part and DENIED in part as
7       follows:
           a. Regarding Plaintiffs' breach of contract claim for TIG's duty to indemnify
              Highmark, it is GRANTED.  This claim is DISMISSED with prejudice.
8          b. Regarding Plaintiffs' breach of contract claim for TIG's duty to defend
              Highmark, it is DENIED.
9          c. Regarding Plaintiffs' negligence claim, it is GRANTED.  This claim is
              DISMISSED with prejudice.
10         d. Regarding Plaintiffs' negligent misrepresentation claim, it is GRANTED.
              This claim is DISMISSED with prejudice.
11         e. Regarding Plaintiffs' bad faith claim for Gillaspy & Rhode's services, it is
              GRANTED.  This claim is DISMISSED with prejudice.
12         f. Regarding Plaintiffs' bad faith claim for TIG's August 16, 2017 letter, it is
              DENIED.
13         g. Regarding Plaintiffs' bad faith claim about the reasonableness of TIG's
              investigation, it is DENIED.
14         h. Regarding Plaintiffs' bad faith claim for TIG's November 15, 2018 denial, it
              is GRANTED.  This claim is DISMISSED with prejudice.
15         i. Regarding Plaintiffs' bad faith claim for TIG's withdrawal of defense, it is
              GRANTED.  This claim is DISMISSED with prejudice.
16         j. Regarding Plaintiffs' equitable estoppel claim for TIG's withdrawal of
              defense, it is GRANTED.  This claim is DISMISSED with prejudice.
17         k. Regarding Plaintiffs' IFCA claim, it is GRANTED.  This claim is
              DISMISSED with prejudice.
18         l. Regarding Plaintiffs' claims for violating the WAC and CPA, it is DENIED.

19   Dated this 28th day of December, 2022.

20

21                                     _____
                                       John H. Chun
                                       United States District Judge
22

23

24

ORDER RE: MOTIONS FOR SUMMARY JUDGMENT - 25