# Exhibit #25

**EP**

# REED M<sup>C</sup>CLURE

**A T T O R N E Y S   A T   L A W**

**A PROFESSIONAL SERVICE CORPORATION**
FINANCIAL CENTER
1215 FOURTH AVENUE, SUITE 1700
SEATTLE, WASHINGTON 98161-1087
FAX: 206/223-0152
206/292-4900
www.rmlaw.com

**IN REPLY REFER TO OUR FILE NUMBER**
065800.000001
065800.000002
065800.000003
065800.000004

**WRITER'S DIRECT LINE**
(206) 386-7014
lyee@rmlaw.com

December 19, 2018

William D. Morrow
Morrow & White
535 Anton Boulevard, Suite 1150
Costa Mesa, CA 92626

Via Email: billmorrow@morrow-white.com and cguest@morrow-white.com

Re:     *Le Clair v Highmark Homes*
         Kitsap County Superior Court Case No. 16-2-02164-8
         Your Claim No. 3017-00017-WA
         Our file No. 065800.000001

         *Becker v Highmark Homes*
         Kitsap County Superior Court Case No. 16-2-02165-6
         Your Claim No. 3017-00019-WA
         Our file No. 065800.000002

         *Darval v. Highmark Homes*
         Kitsap County Superior Court Case No. 17-2-01073-3
         Your Claim No. 3017-00018-WA
         Our file No. 065800.000003

         *Logg v. Highmark Homes*
         Kitsap County Superior Court Case No. 16-2-02163-0
         Your Claim No. 3017-00016-WA
         Our file No. 065800.000004

065800.000001\LT Bill Morrow re pre-mediation report.docx (letterhead).docx

**ASIC 001190**

William Morrow
December 19, 2018
Page 2

Dear Bill:

Please allow this correspondence to serve as our post mediation report.  We received the assignment on these four cases shortly before mediation.  We understand your preference is to receive a single report on all four of the five referenced actions.  Our litigation budget for each case will follow separately.

## NATURE OF CASE

This report addresses four separate construction defect actions involving homeowners of single family residences who are represented by the same counsel, Casey and Skoglund, in four different developments located in Bremerton, Washington.  Our co-counsel in all four cases are Betsy Gillaspy and Patrick McKenna of Gillaspy & Rhode PLLC:

(1)    Le Clair v Highmark Homes – Bay Vista
(2)    Becker v Highmark Homes – East Park
(3)    Darval v. Highmark Homes – Sylvan Way
(4)    Logg v. Highmark Homes – Vintage Falls

## I.    MEDIATION

### A.    POST MEDIATION

We attended four consecutive days of mediation on the above four referenced cases starting on October 29, 2018 to November 1, 2018.  The parties to the mediation were plaintiffs' counsel and Highmark Homes' counsel.  The subcontractors were not invited to participate in any of these mediations, and none attended mediation.  The decision to not include subcontractors was made before our involvement.   The mediator was David Bierman on all four cases.  Additionally, our client's coverage counsel, Zachary McIsaac, was also in attendance at mediation.  Tom Tollen did not attend.

Unfortunately, none of the four cases resolved following the conclusion of the four day mediation.  The post mediation ongoing settlement negotiations between our client's coverage counsel, Zak McIssac and plaintiffs' counsel, Todd Skoglund, culminated in a settlement of $3.75 million and memorialized in a settlement agreement, Civil Rule 2A.  The fully executed settlement agreement is attached as Exhibit A.  We were not included in the settlement negotiations post mediation, and we did not draft or approve the terms in the settlement agreement.  We were given an early draft of the unsigned agreement at the conclusion of the four day mediation, which we sent to you.

The agreement, as discussed, is for the sum of $3.75 million.  The breakdown is as follows:

ASIC 001191

William Morrow
December 19, 2018
Page 3

| | | |
|---|---|---|
| (1) | Le Clair v Highmark Homes – Bay Vista: | $437,625 |
| (2) | Becker v Highmark Homes – East Park: | $1,999,875 |
| (3) | Darval v. Highmark Homes – Sylvan Way: | $375,000 |
| (4) | Logg v. Highmark Homes – Vintage Falls: | $937,500 |

The terms of the settlement provide that plaintiffs have 30 days to confirm agreement to the terms, which they subsequently did.  The two carriers also have 30 days from execution of the agreement to fund the settlement of $3,750,000.  We understand that one carrier may agree to fund the settlement and the agreement does not mandate that both carriers have to do the same.  In other words, the carrier who declines to fund its respective portion of the settlement – portion was not defined -  will be subject to the stipulated judgment and consequences thereof.

There are provisions in the settlement agreement that provide for a stipulated judgment of $8,000,000[1] and an assignment of Highmark Homes and Tom Tollen's rights against the carriers, subcontractors and subcontractors' insurers in exchange for a covenant from plaintiffs to refrain from executing the judgment against Highmark Homes and Tom Tollen, should the carriers decline to fund the settlement.  Please review the CR2 settlement agreement, attached as **Exhibit A**.

## B.    MEDIATION

We provide you with a brief recap of the mediations.  Each of the four cases is separately discussed below.   We started mediation day one with the Le Clair case; plaintiffs, unfortunately, made clear that he would not accept the Valley Haven settlement numbers for these cases, including Le Clair, despite our repeated effort to push for resolution of the Le Clair case at $25,000 per house.  As you may recall after the first day of negotiations, everyone agreed to negotiate all four cases collectively.

There are a total 60 houses in litigation.[2] There was no agreement between the defense and plaintiffs as to the number of houses at the start of the mediation.  Consequently, plaintiffs erroneously represented at mediation that there were 59 houses:

| | |
|---|---|
| (1) | Le Clair v Highmark Homes – Bay Vista, 7 houses |
| (2) | Becker v Highmark Homes – East Park, 32 houses |
| (3) | Darval v. Highmark Homes – Sylvan Way, 6 houses |
| (4) | Logg v. Highmark Homes – Vintage Falls, 14 houses |

---

[1]       We do not know how the parties arrived at $8 million for the stipulated judgement.

[2]       Plaintiffs' counsel subsequently determined after a tentative settlement was reached at mediation that there were 60 houses but stated he would not adjust the settlement amount.  The settlement of $3.75 is for all 60 houses.

ASIC 001192

**EP**

William Morrow
December 19, 2018
Page 4


Once we determined the number of houses in litigation and understood the carriers' position as to time on risk and funding of the settlement, we started to negotiate plaintiffs' settlement demand of $7,669,982.32, which represents the collective demands for all four cases.

The mediator thought plaintiffs wanted $4 million, but we pushed for a lower amount. We discussed the potential exhaustion of one of the Hanover policies – the earlier policy – and there are three Hanover policies to our knowledge. The policy periods are as follows:

7/13 - 7/14
7/14 - 7/15
7/15 - 7/16

Following a closed-door session between the mediator and plaintiffs, plaintiffs agreed to $3.75 million. Plaintiffs' bottom line was a demand for about $65,000 per house but at $3.75 million, the break down is slightly less, $63,559.22 per house for 59 houses.

Co-counsel had not yet determined the value of the subcontractors' potential contribution towards settlement. He was aware of only one AI carrier for one of the siding subcontractors in the Becker v. Highmark Homes case. He, however, was unable provide an estimate of the value of this carrier's potential contribution towards global settlement; co-counsel, who has represented Highmark Homes and Tom Tollen, on other matters was probably attuned to the possibility of a settlement with potential assignment of rights as to the subcontractors and its insurers.

A tentative agreement was reached at the conclusion of the mediation. Mr. Le Peaux was unable to determine its settlement contribution as it needed to prepare large loss reports to Hanover.

Le Clair v. Highmark Homes

There are eight houses in litigation but one of the houses was developed by a developer other than Highmark Homes. The demand was $1,075,657.72, which translates to $134,457.22 per house. The prior settlement demand for the mediation in June 2018 was for $929,000. It is unclear if the demand for $929,000 was for seven or eight houses, as we were not yet involved in this case at that time.

The primary issues involve the T1-11 siding, and roof. Subsequently, plaintiffs added drainage/grading issues. We understand there were additional miscellaneous issues as well.

There was destructive testing of the roof and siding assembly but not of drainage and grading, as these issues were belatedly added. We did not have a defense expert report to address each of these issues, and defense expert Mark Uchimura did not attend plaintiffs' destructive testing. He has reviewed plaintiffs' two reports from destructive testing and photographs from their

**ASIC 001193**

EP

William Morrow
December 19, 2018
Page 5

investigation; one of the two reports was for a house constructed by another developer.  We understand that expert Uchimura agreed that there were siding installation issues and that the siding needed to be removed and replaced.  Expert Uchimura believed that the roofing issues were minor.

The defense estimate was $45,000 per house for siding and none for roofing.  We understand the roofer will likely agree to make roof repairs in lieu of making a settlement contribution.  This arrangement was acceptable to plaintiffs in another Highmark Homes case with the same plaintiffs' counsel.  Our co-counsel had not yet discussed with the roofer the possibly of making repairs to remove the roofing issue; we had asked him to reach out to the roofer during the mediation.

Hanover was not prepared to mediate and had no authority to extend to its defense counsel to respond to any of the settlement demands.  Its handling of this action was complicated by the sudden departure of representative at NARS.  The new representative, Vadim Veksler, had only this file and not the other three files, which were being handled by Mark Le Peaux at NARS.  Mr. Le Peaux did not want to step in to assist with mediation on this file.

We note that the premediation report prepared by co-counsel indicates that some of the homeowners are not original purchasers but subsequent purchasers, who may not have standing to pursue the claims if they lack an assignment of rights from the original purchaser.  We have not yet performed this investigation.  Please advise if this investigation is necessary in light of the looming settlement.

We also learned that the Hanover policies are wasting policies.  We do not believe co-counsel was aware of this fact as it came up during the mediation.

We understand there was an offered by ASUI of $25,000 per house for a total of $175,000; we understand that Highmark Homes was able to successfully resolve an earlier case involving the Valley Haven cases, with the same plaintiffs' counsel for $25,000 per home.  The Valley haven dispute involved defects at the wood framed decks and the interface to the siding and sliding glass doors. It was not a T1-11 siding action, and there were no drainage issues, we were told. Despite our efforts, plaintiffs refused to accept $25,000 per home.  It did not help that we were the sole voice advocating for $25,000 per house.

We understand ASIC determined its time on risk was 10 percent.  But it does not appear that there was an agreement between the carriers on time risk.

Logg v. Highmark Homes

There are 14 houses in litigation.  The settlement demand was $1,999,604.85, which breaks down to $142,828.91 per home.  The prior settlement demand for the mediation in June 2018, was for the sum of $1,775,000.  No reason was given for the increase.

ASIC 001194

**EP**

William Morrow
December 19, 2018
Page 6


Similar to Le Clair, the two primary issues are the T1-11 siding, and roof. Expert Uchimura agrees that the siding needs to be removed and replaced from his investigation and review of plaintiffs' investigation. He, however, disagrees with plaintiffs' assessment as to the roof and the need for extensive repairs.

Co-counsel's premediation report also indicates that some of the plaintiffs are not original purchasers but subsequent purchasers, who may lack standing if they do not have a valid assignment of rights from the original purchaser. We have not yet performed this investigation. Please advise if additional research is necessary in light of the looming settlement.

The parties started negotiation with Le Clair but by the second day, the parties and carriers agreed to negotiate all four cases collectively. Therefore, we do not include a specific response from either carrier to the settlement demand for the remaining three cases.

Becker v. Highmark Homes

There are 47 or 48 houses built by Highmark Houses but only 31 houses in litigation. The settlement demand was $3,873,947.83, which translates to $124,966.05 per house. The prior settlement demand for the mediation in June 2018 was for the sum of $3,370,000.

Again, the primary issues involve the T1-11 siding, and roof. And the defect allegations mirror those made in Le Clair, except we do not know if expert Uchimura believes that roof defect allegations are minor in nature. Expert Uchimura stated that the one roof opening was insufficient for purposes of extrapolating the conditions to all 31 houses. Expert Uchimura did not participate in plaintiffs' destructive testing but had reviewed the two reports from destructive testing along with the photographs from their investigation.

There is one Additional Insured carrier, Arch Specialty, for one of the siding subcontractors who worked on two houses. Our co-counsel could not recall the policy period and if the policy could be triggered in the other cases, provided the subcontractor worked on the other cases. We did not follow up with co-counsel after the tentative settlement was brokered at mediation because our client would assign any and all rights against the subcontractors, including its carriers and additional insured carriers to plaintiffs as part of the settlement.

The same comment about plaintiffs, who are subsequent purchasers, as indicated in co-counsel's premediation report, is applicable to this case. Again, please let us know if you want us to analyze this issue since settlement appears imminent.

Darval v. Highmark Homes

**ASIC 001195**

William Morrow
December 19, 2018
Page 7

There are six houses in litigation. Plaintiffs' demand was $720,771.92, which translates to $120,128.65 per house. The prior settlement demand for the mediation in June 2018, was for the sum of $634,000.

Not surprisingly, the focus is on the T1-11 siding, and roof. Plaintiffs' cost of repair for the siding is $335,176 and $49,538 respectively.

Defense expert Uchimura did not prepare a cost estimate for either issues, but we understand that our expert Uchimura agrees that the siding needs to be repaired. We surmise that the cost of repair is also $45,000 per house, as that was the sum given for the Le Clair case.

Lastly, there appears to be a standing issue with subsequent purchasers who are homeowner plaintiffs, as indicated in co-counsel's premediation report. Again, please let us know if you want us to analyze this issue since settlement appears imminent.

**C.       POST MEDIATION NEGOTIATIONS**

As you requested, we discussed ASIC's interest in resolving all four cases with our client's coverage counsel Zak. We conveyed ASIC's proposal to fund the entire settlement for the Le Clair case, $437,625 which was allocated in the CR2A settlement agreement, to resolve all four cases. We have not received a response from Zak as he is on vacation. We will continue to follow up with him for the response to the question of dismissals of houses and the proposal to resolve these four cases.

**II.       MOTIONS FOR SUMMARY JUDGMENT**

Plaintiffs had previous filed motions for partial summary judgment in two cases, Becker v. Highmark Homes and Le Clair v. Highmark Homes, and refused to strike them despite the pending nature of the settlement and subsequent execution by the parties of the CR2A settlement agreement. Plaintiffs' counsel first explained he wanted to keep the pressure on the carriers to fund the settlement, then later he said he wanted the rulings.

Becker v. Highmark Homes

Plaintiffs' motion for partial summary judgment was set to be heard on December 7, 2018. The motion included two out of thirty-two houses. The T1-11 siding was the only issue that plaintiffs' asked the court to adjudicate.

With your authority, we assisted co-counsel with the preparation of an opposition to the motion. The hearing on the motion was stricken because plaintiffs neglected to confirm the hearing on the motion 48 hours in advance as required under the local rules. To date, the motion has not yet been reset.

ASIC 001196

**EP**

William Morrow
December 19, 2018
Page 8

Le Clair v. Highmark Homes

Plaintiffs filed a motion for partial summary judgment on the issue of the T1-11 siding, sliding glass doors and windows.  There were six houses subject to the motion:

1.    Steve and Brianne Olim
2.    William and Rona McQuillan
3.    Nickolette Doering and Doranne Carleton
4.    Sean and Samantha Caliebe
5.    Richard Bagan
6.    Danilo Aguilar

We include the homeowner matrix for information on the seven houses, which includes the seventh home, the Moses & Candyce Chattman house, not identified above.  **Exhibit B: Homeowner Matrix.**

With authority to work on this motion, we prepared the opposition to the motion and argued the motion on December 10, 2018; co-counsel handled the opposition to the subcontractors' motions for summary judgment.  Our arguments include standing and failure to meet the burden of proof, e.g. insufficient investigation for extrapolation, dispute findings according to our expert, and numerous instances of mis-statements of fact which all raised genuine issues of material fact.  After a lengthy hearing, the court took the motion under submission.  As this report was being finalized, we received the order from the court to deny plaintiffs' motion for partial summary judgment.

During the hearing, plaintiffs' counsel stated he would dismiss plaintiffs, who were subsequent purchasers and without an assignment of rights, in response to our opposition and argument. Even though there are seven houses in this case, the motion for partial summary judgment included six houses, and after the dismissal, the motion proceeded on behalf of these plaintiffs:

1.    Steve and Brianne Olims
2.    William and Rona McQuillan
3.    Nickolette Doering and Doranne Carleton
4.    Sean and Samantha Caliebe
5.    ~~Richard Bagan~~
6.    ~~Danilo Aguilar~~

We also argued that the assignment of rights acquired by plaintiffs Sean and Samantha Caliebe was not valid due to the lack of original signature by the purported original purchasers who also failed to indicate they were the original purchasers.

We have not yet received an order of dismissal as to these houses, except for the Bagan residence, which was filed with the court.  We asked coverage counsel Zak to confirm the

ASIC 001197

William Morrow
December 19, 2018
Page 9

dismissals with plaintiffs' counsel but have not heard back from him.  We will obtain the order regarding Murray Builders' motion, as it addresses the dismissal of the Bagan residence, from the court to provide to you; we did not see the written order as it was part of the subcontractor motions being handled by co-counsel at the hearing.   The houses subject to dismissal include:

| LAST NAME | FIRST NAME | ADDRESS |
|-----------|------------|---------|
| Bagan | Richard & Fatima | 4415 Abalone St., Bremerton, WA 98312 |
| Chattman | Moses & Candyce | 4423 Abalone St., Bremerton, WA 98312 |
| Aguilar | Danilo & Daisy | 4541 Abalone St., Bremerton, WA 98312 |

Two subcontractors also filed motions for summary judgment.  Murray Builders' motion was resolved by the dismissal of the Bagan house due to lack of standing and not heard; Murray Builders' motion was based on lack of standing of plaintiff Bagan to recovery against Highmark Homes and in turn, Highmark Homes could not recovery against it.  Ron Hemley Septic Installation Inc.'s motion for summary judgment was predicated on the lack of a written contract for indemnity and defense and lack of defects asserted to its work is also taken under submission.

## III.   FURTHER HANDLING

We understand there are no additional motions for summary judgment filed by either plaintiffs or the subcontractors.  There are no depositions set or other events on calendar. We intend to follow up with coverage counsel Zak regarding the carrier's proposal for resolution of these four cases and dismissal of the four houses.  Aside from our efforts to follow-up with Zak and the order regarding dismissal of the Bagan residence, and in light of the CR2A settlement agreement, please let us know if you need further research or investigation.

Please know that we sent to the court on December 17, 2018, by U.S. mail, our Notice of Withdrawal and Association of Counsel, as instructed.   Please let us know if you would like a copy.

We appreciate the opportunity to assist you with this matter.  Thank you for thinking of us.

ASIC 001198

**EP**

William Morrow
December 19, 2018
Page 10

Very truly yours,

REED McCLURE

Lily Yee

Encls.

ASIC 001199