1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MATTHEW BECKER, et al., | CASE NO. 3:21-cv-05185-JHC |
| Plaintiffs, | ORDER OF DISMISSAL |
| v. | |
| TIG INSURANCE CO., et al., | |
| Defendants. | |

**I**

**INTRODUCTION**

This matter comes before the Court on its order to show cause.[1]  Dkt. # 176.  The Court

has considered the parties' submissions, the balance of the record, and the applicable law.  Being

fully advised, and for the reasons below, the Court DISMISSES Plaintiffs' claims against

Defendant TIG Insurance Company with prejudice under Federal Rule of Civil Procedure 41(b).

---

[1] On January 18, 2023, the Court granted Defendant United Specialty Insurance Company's
(USIC) motion to bifurcate.  Dkt. # 154.  Plaintiffs' singular claim against USIC for breach of contract
was severed from the claims against TIG.  *Id.*  On January 30, 2023, the Court struck the January 31,
2023, trial date because Plaintiffs were unprepared to try their case against TIG.  Dkt. # 176.  The order to
show cause as to whether dismissal is warranted concerns Plaintiffs' claims against TIG—the only claims
at issue for the January 31, 2023 trial.  *Id.*  This order does not affect Plaintiffs' claim against USIC.

ORDER OF DISMISSAL - 1

## II

### BACKGROUND

This case concerns an insurance coverage dispute in which Plaintiffs, assignees of Highmark Homes LLC, asserted claims for relief against a group of insurance carrier defendants, including TIG.  Dkt. # 2 at 2–3.  Plaintiffs are 45 owners of 30 homes in the East Park housing development in Bremerton, Washington.  *Id.* at 5–8.  Highmark was a general contractor for the construction of homes in the development.  *Id.* at 1457.  TIG issued three general commercial liability policies to Highmark.  *Id*. at 2–3, 8.  The Court's summary judgment order summarizes the parties' dispute.  *See* Dkt. # 121 at 2–6.

A.      Procedural History Before Summary Judgment Motions

On March 23, 2021, Plaintiffs filed their amended complaint.  Dkt. # 2.  The next day, the Court entered an order requiring submission of Rule 26(a)(1) initial disclosures by June 15, 2021.  Dkt. # 3.  TIG timely submitted its initial disclosures.  Dkt. # 168 at 2; Dkt. # 183-2 at 10.  Plaintiffs' initial disclosures, submitted on July 22, were 30 days late.  Dkt. # 168 at 2.  In October 2021, the Court issued an order setting pretrial deadlines: disclosure of expert witness testimony under Rule 26(a)(2) by July 25, 2022; joint pretrial order filed by January 9, 2023; and proposed jury instructions and voir dire filed by January 10, 2023, among others.  Dkt. # 38.

The parties then engaged in discovery and motions practice.  *See, e.g.*, Dkt. # 168 at 3 ("TIG has responded to 83 requests for production, 25 interrogatories, and 134 requests for admission.").  Plaintiffs filed four discovery-related motions, *see* Dkts. ## 44, 49, 81, 82, and three were denied, *see* Dkts. ## 48, 63, 86.  For one motion, the Court ordered TIG to

1    supplement three interrogatory responses.  Dkt. # 86 at 11.  TIG timely supplemented its

2    responses.[2]  Dkt. # 183-2 at 102–13.

3         Plaintiffs took no depositions in this case.  Dkt. # 186 at 4.  On September 13, 2022,

4    Plaintiffs sent four deposition notices to TIG's counsel: one Rule 30(b)(6) notice for both TIG

5    and RiverStone Claims Management, a third-party company that handles claims on behalf of

6    TIG, and notices for two RiverStone employees.  Dkt. # 183-3 at 1; Dkt. # 182 at 2–3.  The same

7    day, TIG's counsel replied that counsel was unavailable during Plaintiffs' proposed dates.  Dkt. #

8    186 at 8.  On October 4, 2022, TIG objected to the Rule 30(b)(6) notices because the 57

9    deposition topics listed were "impermissibly broad" and "fail[ed] to reasonably particularize the

10   subjects of the intended inquiry."  *Id.* at 11; *see* Dkt. # 183-3 at 3-16 (Plaintiffs' Rule 30(b)(6)

11   deposition notices).  TIG's counsel stated that once the topics were clarified and narrowed, TIG

12   would work with Plaintiffs to reschedule the depositions.  Dkt. # 186 at 13.  According to TIG,

13   Plaintiffs never responded to TIG's email or otherwise clarified or narrowed the scope of the

14   Rule 30(b)(6) notices.  *Id.* at 4.

15        On September 16, 2022, Plaintiffs disclosed the identity of their expert witness, J. Kay

16   Thorne, 53 days after the Rule 26(a)(2) deadline to disclose expert testimony.  Dkt. # 92-1.

17   Plaintiffs did not provide Mr. Thorne's expert report.  Dkts. ## 92, 92-1.  The Court later granted

18   TIG's motion to exclude the expert.  Dkt. # 103.

19        In July and November 2022, Plaintiffs twice moved to continue the trial date.  Dkts. ##

20   49, 97.  Both motions were denied for lack of good cause.  Dkts. ## 65, 105.

21

22        [2] For one interrogatory response, the Court ordered TIG to produce its claims handling guidelines,
     subject to a protective order.  Dkt. # 86 at 11.  Two days after entry of the order, TIG forwarded a
23   proposed protective order to Plaintiffs to permit production of its proprietary guidelines.  Dkt. # 168 at 3;
     *see* Dkt. # 168-1.  According to TIG, Plaintiffs never responded.  Dkt. # 168 at 3.  Plaintiffs do not
24   dispute this.

ORDER OF DISMISSAL - 3

B.    Summary Judgment Order

The parties cross-moved for summary judgment.  Dkts. ## 59, 96.  On December 28,

2022, the Court denied Plaintiffs' motion and granted in part and denied in part TIG's motion.

Dkt. # 121.  The Court denied the parties' motions for reconsideration.  Dkts. ## 148, 151.

These claims against TIG remained: breach of contract for TIG's duty to defend Highmark; bad

faith concerning TIG's August 2017 letter and the reasonableness of TIG's investigation; and

violations of the Washington Administrative Code and the Washington Consumer Protection

Act.  Dkt. # 121 at 25.

C.    Events Leading to Trial

The Court's 2021 scheduling order set a jury trial for January 31, 2023.  Dkt. # 38.  TIG

timely submitted proposed jury instructions and voir dire questions.  Dkts. ## 138–39.  Plaintiffs

submitted proposed voir dire on January 11, one day late, and proposed jury instructions on

January 13, three days late.  Dkts. ## 146, 152.

On January 20, the Court held a pretrial conference during which the parties were

directed to jointly file a pretrial order by January 24.  Dkt. # 159.  Plaintiffs did not represent

during the conference that they were unprepared to try their case on January 31.

At some point in January, after the December 12, 2022, deadline set by the local rules,

Plaintiffs served on TIG a pretrial statement identifying their witnesses.[3]  *See* Dkt. # 162 at 7–8

(Plaintiffs' January 24, 2023 pretrial statement filing); *see also* LCR 16(h) (requiring a plaintiff

to "serve upon counsel for all other parties" a pretrial statement "[n]ot later than 30 days prior to

the date for filing the proposed pretrial order"); Dkt. # 38 (scheduling order setting January 9,

2023 pretrial order deadline).

_____

[3] According to TIG, Plaintiffs failed to serve their pretrial statement until *after* the pretrial conference.  Dkt. # 181 at 8.  Plaintiffs do not dispute this.

ORDER OF DISMISSAL - 4

1

2

3

4

5

On January 23, Plaintiffs delivered six subpoenas to the Seattle office of Lane Powell, the law firm for TIG's counsel.  Dkt. # 182 at 5–22.  The subpoenas identified six individuals who work or used to work for RiverStone.  *Id.* at 2–3.  According to TIG, none of these witnesses reside or work within 100 miles of this district's Seattle courthouse or within the state of Washington.  Dkt. # 182.

6

7

8

9

10

On January 24, Plaintiffs filed a third motion to continue the trial date.  Dkt. # 163.  After oral argument on January 27, the Court denied the motion for lack of good cause.  Dkt. # 170.  On January 30, the day before trial, Plaintiffs and TIG filed their pretrial order, Dkt. # 175, having missed both the January 9 deadline set by the scheduling order and the January 24 deadline issued during the pretrial conference, Dkts. ## 38, 159.

11

12

13

14

15

Later that day, less than 24 hours before trial, Plaintiffs filed a letter with the Court.  Dkt. # 174.  Plaintiffs said, "Without documents," they "did not have a case"; and "without witnesses[,] they cannot present a case."  *Id.* at 1.  The letter explained that because TIG "will not be producing the witness subpoenaed for [January 31] or any other witness for trial because they were not served properly," there was "no reason to pull a jury."  *Id.* at 1–2.

16

17

18

19

Soon after on January 30, noting that it was "clear from the letter that Plaintiffs [were] not prepared to proceed to trial tomorrow," the Court struck the January 31, 2023 trial date.  Dkt. # 176 at 1.  The Court ordered the parties to show cause as to whether this case should be dismissed under Rule 41(b) or any other authority.  *Id.*

20

21

### III

#### DISCUSSION

Rule 41(b) allows district courts to dismiss an action for failure to prosecute or to comply

22

23

with rules or a court order.  *See* Fed. R. Civ. P. 41(b); *Link v. Wabash R. Co.*, 370 U.S. 626, 629–

30 (1962) (a district court's "power to [dismiss an action for failure to prosecute] is necessary in

24

order to prevent undue delays in the disposition of pending cases and to avoid congestion" in the

calendars of the district courts); *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683,

689 (9th Cir. 2005) (explaining that "courts may dismiss under Rule 41(b) sua sponte" for a

plaintiff's failure to prosecute or comply with the court's orders or the Federal Rules of Civil

Procedure); *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) (failure to follow a district court's

local rules is a proper ground for dismissal). Rule 41(b) requires a plaintiff to prosecute their

case with "reasonable diligence" if a plaintiff is to avoid dismissal. *Moore v. Telfon Commc'ns*

*Corp.*, 589 F.2d 959, 967 (9th Cir. 1978) (quoting *Anderson v. Air W., Inc.*, 542 F.2d 522, 524

(9th Cir. 1976)). Because dismissal is a "harsh penalty," it should be "imposed only in extreme

circumstances." *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986). This case presents

such a circumstance.

Five factors guide a district court's discretion in dismissing a case under Rule 41(b): "(1)

the public's interest in expeditious resolution of litigation; (2) the court's need to manage its

docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of

cases on their merits; and (5) the availability of less drastic sanctions." *Id.* Dismissal is proper

"where at least four factors support dismissal . . . or where at least three factors strongly support

dismissal." *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998) (citation and

quotation marks omitted). Dismissal under Rule 41(b) operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b).

In this case, Plaintiffs have violated the Federal Rules of Civil Procedure (Rule 26(a)(1)

initial disclosures deadline and Rule 26(a)(2) expert testimony disclosure deadline); the Court's

orders (untimely proposed voir dire and untimely proposed jury instructions); the local rules

(untimely pretrial statement), and Plaintiffs have failed to prosecute their case with "reasonable

diligence." *Moore*, 589 F.2d at 967. Three out of five factors strongly support dismissal (and

four factors support dismissal) of Plaintiffs' claims against TIG for their failure to prosecute and to comply with the Court's orders and rules.

A.      Expeditious Resolution of Litigation

The first Rule 41(b) factor—the public's interest in expeditious resolution of litigation—favors dismissal.  "The public's interest in expeditious resolution of litigation *always* favors dismissal."  *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (quoting *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999)) (emphasis added).  "Orderly and expeditious resolution of disputes is of great importance to the rule of law.  By the same token, delay in reaching the merits, whether by way of settlement or adjudication, is costly in money, memory, manageability, and confidence in the process."  *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006).  Dismissal "serves the public interest in expeditious resolution of litigation as well as the court's need to manage the docket when a plaintiff's noncompliance has caused the action to come to a halt."  *Id.* at 1234.

Plaintiffs have exhibited a pattern of noncompliance with deadlines.  *See* Dkt. # 168 at 2 (untimely initial disclosures); Dkts. ## 92, 92-1 (untimely expert disclosures); Dkt. # 146 (untimely voir dire); Dkt. # 152 (untimely jury instructions); Dkt. # 162 (untimely pretrial statement).  Further, Plaintiffs brought this action to a halt when they conceded—the day before trial—that they were not prepared to try the case.  Plaintiffs stated that "[w]ithout documents" and "without witnesses," they could not try their case.  Dkt. # 174 at 1.  Thus, there was "no reason to pull a jury."  *Id.* at 2.  Plaintiffs' conduct and noncompliance with deadlines has resulted in an increased investment of judicial resources in this case, to the detriment of others.  *See Chism v. Nat'l Heritage Life Ins. Co.*, 637 F.2d 1328, 1331–32  (9th Cir. 1981), *overruled on other grounds by Bryant v. Ford Motor Co.*, 844 F.2d 602 (9th Cir. 1987) ("[Plaintiff] or his attorneys continually flouted discovery rules, failed to comply with pretrial conference

obligations, and repeatedly violated the local rules of court[,] . . . [which] contributed to court congestion by wasting valuable court time. . . . '(F)airness to other litigants, whether in the same case or merely in the same court (as competitors for scarce judicial resources), requires us to affirm . . . .'") (quoting *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664 (2d Cir. 1980)).  This factor strongly favors dismissal.

B.      Docket Management

The second Rule 41(b) factor—the Court's need to manage its docket—favors dismissal. "District courts have inherent power to control their dockets.  In the exercise of that power they may impose sanctions including, where appropriate, default or dismissal." *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986).  And the district court "is in the best position to determine whether the delay in a particular case interferes with docket management." *Pagtalunan*, 291 F.3d at 642.  "It is incumbent upon the [district court] to manage its docket without being subject to routine noncompliance of litigants." *Id.*  If a plaintiff's "dilatory conduct greatly impeded resolution of the case and prevented the district court from adhering to its trial schedule," the first and second Rule 41(b) factors support dismissal. *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987).  "[D]istrict courts cannot function efficiently unless they can effectively require compliance with reasonable rules. Absence of meaningful power to require that compliance would make for disorder and preclude effective judicial administration at the trial court level." *Chism*, 637 F.2d at 1332. *See Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1060 (9th Cir. 2005) ("In these days of heavy caseloads, trial courts in both the federal and state systems routinely set schedules and establish deadlines to foster the efficient treatment and resolution of cases. Those efforts will be successful only if the deadlines are taken seriously by the parties, and the best way to encourage that is to enforce the deadlines.").

Plaintiffs' lack of preparation, as evidenced by their letter filed at the eleventh hour, prevented the Court from adhering to its January 31, 2023, trial date. The Court's current caseload is great. That the docket is congested is illustrated by the timing of this order, issued over five weeks after the trial date was struck. Plaintiffs must appreciate the importance of being ready to try their case on their designated date because of the Court's limited availability. Again, Plaintiffs did not notify the Court at the pretrial conference that they could not proceed with trial as scheduled. Their disclosure the day before trial that there was "no reason to pull a jury" shows a lack of consideration for the Court, court personnel, and opposing counsel. Dkt. # 174 at 2. And Plaintiffs' repeated failures to meet deadlines undermined efficient management of the docket. *See Pagtalunan*, 291 F.3d at 642. This factor also strongly favors dismissal.

C.      Prejudice to Defendant TIG

The third Rule 41(b) factor—the risk of prejudice to defendant TIG—favors dismissal. "A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *In re PPA Prod. Liab. Litig.*, 460 F.3d at 1227 (quoting *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir.1990)). "Whether prejudice is sufficient to support an order of dismissal is in part judged with reference to the strength of the plaintiff's excuse for the default." *Malone*, 833 F.2d at 131.

TIG suffered prejudice because Plaintiffs interfered with TIG's trial preparation, and they prevented TIG from going to trial at the scheduled date. Plaintiffs' late pretrial statement listing trial witnesses and exhibits impeded TIG's trial preparation as TIG was unsure as to Plaintiffs' witnesses and evidence at trial. Dkt. # 181 at 8; *see Drayton v. Rinaldo*, No. 19-55765, 2022 WL 1451393, at *2 (9th Cir. May 9, 2022) ("The district court found prejudice because the lack of pretrial papers meant that [the defendant] could not have known what theories [the plaintiff] was going to assert to succeed on his claims and what evidence he intended to adduce at trial.")

(affirming Rule 41(b) dismissal) (quotation marks omitted).  TIG complied with pretrial deadlines and was prepared to begin trial as scheduled.  *See* Dkts. ## 138–40, 181 at 8.  Because of Plaintiffs' lack of preparation, the trial date was struck less than 24 hours before it was scheduled to begin.  At that point, TIG had prepared for a trial that was no longer imminent.  *See Malone*, 833 F.2d at 131 (holding that the plaintiff's "last-minute notification of her decision not to comply with the pretrial order" a few weeks before trial, after the defendant "had devoted considerable effort to complying with" the order, prejudiced the defendant); *Guru Denim, Inc. v. Hayes*, No. CV 08-4493 SCW (RC), 2010 WL 1854020, at *8 (C.D. Cal. May 6, 2010) (holding that the defendant was prejudiced by the plaintiff's failure to file required pretrial submissions, the plaintiff's lack of preparation for the pretrial conference or for trial, and the plaintiff's conduct that "ultimately prevented [the defendant] from being able to litigate this case at the time that trial was supposed to commence").  A continuance would not unburden TIG of its efforts in preparing for the original trial date.

Plaintiffs' excuses supporting their apparent inability to try their case are unpersuasive.  First, Plaintiffs say that TIG's discovery responses were not signed properly, thereby preventing the discovery from being introduced into evidence at trial.  Dkt. # 180 at 9.  The Court rejected this argument once before and ruled that TIG's discovery responses complied with Rule 26(g)'s certification requirements.  Dkt. # 63 at 6.  Plaintiffs fail to identify which discovery responses would have supported their claims at trial.  Plaintiffs also designate no discovery responses in their proposed exhibit list, undermining their position that TIG's signatures prevented Plaintiffs from trying their case.  *See* Dkts. ## 162, 175.

Second, Plaintiffs appear to argue that TIG prevented Plaintiffs from relying on witness testimony at trial.  Dkt. # 180 at 9–10.  Plaintiffs contend that TIG refused to provide the home addresses for current or former RiverStone employees subject to an October 2022 discovery

ORDER OF DISMISSAL - 10

order.  Dkt. # 180 at 10; *see* Dkt. # 86.  There, the Court ordered TIG to respond to an interrogatory that sought to identify the employees "who played a role during the lifecycle of the insurance claims at issue."  Dkt. # 86 at 8.  TIG timely amended its answer to this interrogatory and identified the individuals.  Dkt. # 183-2 at 108–13.  On November 28, 2022, Plaintiffs asked for TIG to accept service of trial subpoenas or provide home addresses for individuals that Plaintiffs sought to have testify at trial.  Dkt. # 183-7.  TIG responded that four of the individuals "are not and never have been affiliated with TIG."  Dkt. # 183-8 at 2.  TIG declined to accept service on behalf of the others.  *Id.*  (TIG email stating that "there is no connection between our legal representation of these individuals in their capacities as current or former employees and your intent to serve them").  While TIG does not appear to have provided a list of home addresses, Plaintiffs fail to articulate why TIG needed to comply with Plaintiffs' request.

Third, and relatedly, Plaintiffs stated in their letter that they could not try their case because TIG had "informed [Plaintiffs] it [would] not be producing the witness subpoenaed for tomorrow or any other witness for trial because they were not served properly."  Dkt. # 174 at 1.  On January 23, a week before trial, Plaintiffs delivered six subpoenas to TIG's counsel.  Dkt. # 182 at 5–22.  Plaintiffs cite no authority to support the proposition that TIG's counsel had to accept service of these trial subpoenas.  And Plaintiffs do not challenge TIG's representation that those named in the subpoenas do not reside or work within 100 miles of this district's Seattle courthouse or within the state of Washington.  *See* Dkt. # 182 (declaration that six RiverStone employees subject to trial subpoenas reside or work in California, New Hampshire, or Massachusetts).  Rule 45 does "not authorize this Court to compel [an individual's] attendance" who "is more than 100 miles from Seattle and in another state."  *Roundtree v. Chase Bank USA, N.A.*, No. 13-239 MJP, 2014 WL 2480259, at *2 (W.D. Wash. June 3, 2014); *see* Fed. R. Civ. P. 45(c)(1).

ORDER OF DISMISSAL - 11

Finally, Plaintiffs argue that they should not be punished because of the errors of their attorney.  Dkt. # 180 at 3–4, 9–10 (Plaintiffs' counsel stating he was "unaware" and "a fool" and requesting that his clients not be "punished for [their counsel's] errors").  Attempting to excuse conduct based on deficient counsel when a party faces dismissal under Rule 41(b) is an argument that is consistently rejected in civil cases.  *See, e.g.*, *Anderson*, 542 F.2d at 526 ("The plaintiff cannot avoid this dismissal by arguing that she is an innocent party who will be made to suffer for the errors of her attorney.") (affirming Rule 41(b) dismissal); *Henderson*, 779 F.2d at 1424 (rejecting the plaintiff's argument that Rule 41(b) dismissal prejudiced the plaintiff for his counsel's errors because the plaintiff "was free to select the counsel of his choice") (affirming Rule 41(b) dismissal); *Link*, 370 U.S. at 633–34 ("There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client.  Petitioner voluntarily chose this attorney as his representative . . . , and he cannot now avoid the consequences of . . . this freely selected agent.") (affirming Rule 41(b) dismissal).

This factor also strongly favors dismissal.

D.      Dispositions on the Merits

"The fourth factor, resolution of cases on their merits, always weighs against dismissal." *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011).

E.      Availability of Less Drastic Sanctions

As shown above, at least three factors strongly favor dismissal, and thus suffice under *Hernandez* to warrant dismissal with prejudice.  138 F.3d at 399.  But that is not all.  The fifth Rule 41(b) factor—the availability of less drastic sanctions—favors dismissal.  A district court "'abuses its discretion if it imposes a sanction of dismissal without first considering the impact of

1   the sanction and the adequacy of less drastic sanctions.'" *Malone*, 833 F.2d at 131–32 (quoting

2   *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 912 (9th Cir. 1986)).

3          Though dismissal is a "harsh penalty," less drastic sanctions are not feasible or

4   appropriate.  *Henderson*, 779 F.2d at 1423.  Plaintiffs' counsel says that he "will accept any fine

5   or sanction," offering to pay for a "$3,000.00 donation to a local charity of TIG's choice."  Dkt.

6   # 180 at 10.  Such a fine will not remedy the effects of Plaintiffs' lack of preparation.  Because

7   the trial date was struck, any sanction short of dismissal requires setting a new trial date.

8   Granting Plaintiffs a continuance would undercut the Court's three prior orders denying

9   Plaintiffs' motions to continue the trial date for lack of good cause.  *See* Dkts. ## 65, 105, 170.

10  Furthermore, the Court was forced to strike the trial date because less than 24 hours before trial,

11  Plaintiffs revealed that they were not prepared.  If the Court had not stricken the trial date, the

12  expense of pulling jurors would have been incurred, other judicial resources would have been

13  spent, and TIG would have incurred additional attorney fees.  Notably, in such an event, a jury

14  would have been selected, but Plaintiffs would not have put on a case, and the Court would have

15  dismissed the case against TIG with prejudice.  To be sure, Plaintiffs should not be rewarded

16  with a new trial date in such a circumstance.  Less drastic sanctions have certainly been

17  considered and, given the circumstances presented, including how Plaintiffs have litigated this

18  matter, the Court does not see how any sanction short of dismissal would be appropriate.

19         The Ninth Circuit "may affirm a dismissal where at least four factors support dismissal,

20  or where at least three factors strongly support dismissal."  *Dreith*, 648 F.3d at 788 (quoting

21  *Yourish*, 191 F.3d at 990).  Dismissal of Plaintiffs' claims against TIG is warranted because three

22  factors strongly support dismissal, and four factors support dismissal.

23

24

ORDER OF DISMISSAL - 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

IV

CONCLUSION

For the above reasons, the Court DISMISSES Plaintiffs' claims against TIG with prejudice under Federal Rule of Civil Procedure 41(b).

Dated this 17th day of March, 2023.

*John H. Chun*
John H. Chun
United States District Judge

ORDER OF DISMISSAL - 14